JOHN T. RICE, *Appellant*, v. THE STATE OF KANSAS, *Appellee.*

*Criminal Appeal from Leavenworth County.*

The Criminal Court of Leavenworth county, established in March 1862, had conferred upon it the same criminal jurisdiction that had been, by sec. 1 of an "act relating to the organization of courts of justice" (Comp. Laws 454,) conferred on the District Court of that county.

Subdivision 5, sec. 2 of act of Feb. 24th, 1864, amending the general law incorporating cities, does not confer upon the city council *exclusively* the power to prohibit and suppress games and gambling houses, &c., and cannot by implication be so extended as to nullify the plain provisions of the act establishing the Criminal Court of Leavenworth county. The intention was to give to the city authorities power concurrent with that of the state authorities to suppress these evils and not to confine it to either. *It seems* the court which shall first obtain jurisdiction of the person, may punish to the extent of its power.

The recorder's court of the city of Leavenworth is not a court of record; has no grand jury, nor petit exceeding six, and for the highest crime cannot inflict a penalty beyond a fine of $100, and imprisonment for one year.

The *first* clause of sec. 14 of act of Feb. 24th, 1864, (pp. 129, 30, L. 1864,) confers upon the recorder all the powers of a justice of the peace in criminal matters and gives him concurrent jurisdiction with any other justice of the county to inquire into the commission of offenses, hold to bail, &c.; the *second* clause gives him exclusive jurisdiction under the city ordinances and of certain misdemeanors under the state laws committed within the city, and the *last* clause providing that he "shall have exclusive original jurisdiction of all offenses against the laws of the state committed within the limits of said city," conferred upon him the exclusive power to institute preliminary examinations and hold to bail in such cases, and *held* that it was not the intention of the legislature thereby to provide that the only tribunal in which a person could be tried for an offense committed in the city, is before the recorder.

*It seems*, such a construction of the *last* clause would make it include what is provided for in the *second* clause, and it will not be supposed that the same thing was intended to be provided for in two succeeding clauses of the same section.

Demurrer to a plea of jurisdiction under an indictment in the Criminal Court of Leavenworth county for keeping a gambling house in the city of Leavenworth, *sustained.*

A question of the jurisdiction of the court may be presented at any time.

The proper time to raise the question of the sufficiency of the indictment before verdict, is by motion to quash; after verdict, by motion in arrest of judgment, and *it seems* it is not correct practice after the jury is sworn and trial commenced by placing a witness on the stand, to move to exclude all testimony under the indictment, on the ground that it does not charge a public offense; *Held* that to overrule such a motion is not error.

Section 7 of act of Feb. 12th, 1864, abolishing grand juries, &c., does not abrogate the former law on that subject. The old statute provides the machinery; the new authorizes the judge to put it in motion, and both *held* to have a uniform operation within the meaning of sec. 17, art. 2, Const. Kansas.

The section on which the indictment was founded (sec. 230, Crimes Act, Comp. L., 333) having prohibited by name the setting up or keeping "faro banks," it was not necessary to set forth in the indictment that it was a gambling device "adapted, devised and designed for the purpose of playing any game of chance for money or property." The legislature took cognizance that a "faro bank" was such device. *Semble,* other devices than those named in the act, must be charged to be "adapted, devised," &c.

Where in such case it is alleged that "persons did bet and play at the game," an allegation that "money or property was bet, or lost or won on the device," is not necessary.

In such case a charge by the court below to the jury, as follows : "To establish the fact of one being the keeper of a faro-bank, it is sufficient to show that he appeared thus acting as the one having control, in charge, superintending the same," *was held* to be good.

The court did not err in refusing to charge substantially "that it (the court) had the right to determine whether the indictment charges an offense; that in the indictment before the court no offense is charged nor issue joined, therefore the jury must find for defendant," that not indicating correct practice.

Where the court charges the law correctly, it is not bound to repeat the charge in a different form.

In this case evidence having been offered on the trial tending to prove that the name of one person at least, who was induced to bet and play at the game of faro at the faro-bank was known to the grand jurors who found the indictment, and at the time of their finding, such person was a witness at the trial, and the indictment having charged that the names of such persons were to the grand jury unknown, *it was held* that the court did not err in refusing to charge the jury, that "if the name of such person was known to the grand jurors, or could by reasonable diligence and inquiry

have been ascertained, then the defendant must be acquitted." The common law rule involved in the charge is regarded by the court as technical within the meaning of sec. 276, Crim. Code [Comp. L, 276] and the reason for the rule, viz : to apprise the accused of the accusation against him, having failed, the person referred to having been a witness on the trial, the rule must cease.

The object of the provision in that section of the statute is to make it the duty of the court to act on the axiom that "the rule ceases with the reason of it."

The facts of the case sufficient to present the points decided, appear in the opinion of the court.

The case was argued in Supreme court by *Lecompte* and *Fitzwilliams*, for appellant, and by *Att'y Gen. Brumbaugh* and *Ide*, for the State.

*Hemmingray, Gambell & Fitzwilliams* and *S. Lecompte,* for appellant, submitted :

1. The plea to the jurisdiction of the court should have been sustained.

The Criminal Court of Leavenworth county has no jurisdiction of offenses arising within the corporate limits of Leavenworth city. The recorder is vested with the exclusive original jurisdiction of the same.

Sec. I., Art. III, State Constitution, grants the authority to the legislature, to vest judicial power in courts inferior to the Supreme Court, as they may provide by law. There can be no question that the act of 1864, p. 129, 30, sec. 14, Laws 1864, created a recorder's court. See also case of Malone *v.* Murphy, 2 Kansas R., 250.

If the legislature had the constitutional authority to create such an inferior court as the recorder's, then they had the power to designate the extent of jurisdiction of the court so created.

The District Court shall have original jurisdiction of all crimes and offenses, except in cases of minor offenses, the exclusive jurisdiction of which is or may be possessed by

justices of the peace, or that may be vested in courts inferior to the District Court. *Comp. L.* 454, *sec.* 1.

The Criminal Court of Leavenworth county shall have the same jurisdiction of all crimes and misdemeanors committed or triable in said county, as the District Courts of the state. *Id.* 348, *sec.* 1.

The recorder shall, by virtue of his office, be a justice of the peace, and shall have all the powers conferred, or to be conferred by law upon justices of the peace, except in civil cases ; said recorder shall have exclusive jurisdiction to hear and determine all offenses against the ordinances of the city, and all cases of misdemeanors arising under the laws of this state, arising within the limits of said city, in which the fine which may be imposed does not exceed one hundred dollars or the imprisonment one year, and shall have exclusive original jurisdiction of all offenses against the laws of the state committed within the limits of said city. *Laws* 1864, *p.* 130, *sec.* 14.

If the legislature could vest the power to try criminal cases in the District or Criminal Courts by the term original jurisdiction, they certainly have, by the broader and more comprehensive terms, exclusive original jurisdiction, conferred that power on the recorder's court.

Jurisdiction is original when it is conferred on the court in the first instance. *Bouvier's Dict.*

Exclusive jurisdiction is that which alone has the power to try or determine the suit, action or matter in dispute. *Ibid.*

In Indiana, a case similar to the one at bar, arose. The statute of that state created a Common Pleas Court, and it empowered said court to take cognizance of certain criminal offenses, which said court did, in a certain case.

At the same session of the legislature, but after the passage of the "common pleas act," a statute was approved, providing for the organization of Circuit Courts. Said statute contained this clause, viz: such Circuit Courts "shall have original exclusive jurisdiction in all felonies."

Rice v. The State of Kansas.

The question presented in that case, was: Does the act conferring exclusive jurisdiction of felonies upon the Circuit Court take away the jurisdiction previously possessed in such cases by the Court of Common Pleas? PERKINS, J., delivering the opinion, said: "It would seem that there could be but one opinion upon language so explicit as that contained in the circuit court act."

"Exclusive means, without the participation of any other; and exclusive jurisdiction of all felonies means, a jurisdiction of them in which no other court has any participation. Hence, the Common Pleas Court cannot participate in such jurisdiction, and still leave it in the exclusive possession of the Circuit Court. The language of the circuit court act neither contains nor implies any exception, any limitation to any particular mode or course of proceeding; but the jurisdiction is to be original and exclusive in all felonies, and, hence, necessarily requires them to be prosecuted according to the mode of proceeding in said Circuit Court." Judgment below reversed for want of jurisdiction in the Common Pleas Court. *Spencer* v. *The State*, 5 *Porter Ind. R.*, 42, 3; *Spriggs* v. *The State*, 2 *Id.*, 75; *Nelson* v. *The State*, *Id.*, 249; *Smith* v. *The State*, *Id.*, 251; *The State* v. *Lackey*, *Id.*, 285; *Talbot* v. *The State*, *Id.*, 635; *The State* v. *Trimble*, *Id.*, 655; *The State* v. *Loyd*, *Id.*, 659.

In Feb. 1845, an act was passed by the legislature conferring upon the city court of Lexington exclusive jurisdiction of all pleas of the commonwealth, arising within the city of Lexington, except cases of felony. As the offense charged in the indictment in this case, was committed within the limits of the city of Lexington, it is insisted that after the passage of the act referred to, the Fayette Circuit Court had no jurisdiction of it. But we are not prepared to give that act so broad a construction. At its passage the case was pending in that court, which had jurisdiction to hear and determine it.

The exclusive jurisdiction conferred upon the city court,

must, we think, have reference to cases arising subsequent to the passage of the act, or to cases or proceedings subsequently to be commenced. *Ashlock* v. *Commonwealth*, Vol. 7, (*B. Monroe*,) *Ky. R.*, 44; *State* v. *William Clegg*, 27 *Con.*, 592; 4 *Gray*, 201.

When the legislature has expressed its will in plain and unambiguous language,'courts are bound to say they meant what they clearly expressed. It is not any part of the duty of a court to determine whether a law is a good or bad one, or whether its effects and consequences are beneficial or pernicious, if its terms are clear and undoubted. *Dudley* v. *Reynolds*, 1 *Kan. S. R.*, 289; *Heirs of Ludlow* v. *Johnson*, 3 *Ohio R.*, 553; *Pitman* v. *Flint*, 10 *Pick.*, 504.

2. The indictment does not state facts sufficient to constitute a public offense, nor does it charge that a public offense was committed.

If this is true the court should have sustained the motion of defendant to exclude all evidence under it. The statute upon which this indictment is framed reads as follows:

" Every person who shall set up or keep any table or gambling device, commonly called A. B. C., faro-bank, E. O., roulette, equality, or any kind of gambling table or gambling device, adapted, devised and designed for the purposes of playing any game of chance, for money or property, and shall induce, entice, or permit any person to bet, or play at or upon any game played at or by means of such table or gambling device, or on the side or against the keeper thereof, shall, &c. *Sec.* 230, *Crimes Act*, *Comp. L.*, 333.

1st. The indictment does not describe the offense created by the statute, in this: that it omits the description of the gambling table or device, as one " adapted, devised and designed for the purpose of playing any game of chance for money or property. *State of Missouri* v. *Armes*, 10 *Mo. R.*, 745; *State* v. *Ellis*, 4 *Id.*, 476.

All indictments upon statutes, especially the most penal,

must state all the circumstances which constitute the definition of the offense in the act, so as to bring the defendant precisely within it. And not even the fullest description of the offense, were it even in the terms of a legal definition, would be sufficient, without keeping close to the expressions of the statute. 1 *Chitty's Crim. L.*, 282; 7 *O.* 206.

2d. The indictment does not allege that any money or property was bet upon the table or device. 7 *Ohio*, 206; 3 *Ind.*, 531.

Every thing which is the essence or substance of the offense must be charged in the indictment. And unless money or property were bet, the statute was not violated; otherwise, betting money or property being the substance of the offense, it must be charged in the indictment. *Hale* v. *The State*, 8 *Texas*, 171; 14 *U. S. Dig.*, 330, *sec.* 18.

3d. The indictment does not allege that a game of chance was played for money or property upon "faro-bank." *Lowrey* v. *The State*, 1 *Mo. R.*, 518, (722.)

Nor does it allege that "faro-bank" is a game of chance, or that it was set up and kept for the purpose, solely, of playing at games of chance, for money or property. *Lowrey* v. *The State, Supra.*

4th. The indictment does not allege that any money or property was lost or won upon the said table or device, or at or upon any game played by means of such table or gambling device, on the side of the keeper or against the keeper thereof. 19 *Mo.*, 680.

5th. The indictment is bad for uncertainty in charging the offense, and simply charges a conclusion of law.

3. The court erred in its charge to the jury.

As to the second charge refused, see State *v.* Ellis, 4 Mo., 476.

And as to the third, see authorities above cited.

As to the tenth, sixteenth, seventeenth and eighteenth, see George Glascock *v.* The State, 10 Mo. 509.

That the fourteenth was wrongly refused, see The Com-

monwealth *v.* Burns, 4 J. J. Marshall, (Ky.) 181, 2, and as to the fifteenth, *vide ibid.*

That the twenty-first was good law, see Comp. L. p. 345-6, secs. 304-5-6.

4. The court should have granted the motion in arrest of judgment.

1st. The grand jury who found the indictment had no legal authority to inquire into the offense charged, by reason of its not being within the jurisdiction of the court. *See authorities cited under first point.*

Section 7, p. 113, Laws 1864, is unconstitutional and void, as conflicting with sec. 17, art. 2, State Constitution. If the Criminal Court had jurisdiction of the offense charged, it could only obtain the right to try the offense by information, pursuant to chap. 64, Laws 1864.

2d. The facts stated do not constitute a public offense. *See authorities cited under second point.*

5. The court erred in overruling the motion for a new trial.

1st. The court allowed the State to show that "checks" were bet at said faro-bank. Such evidence does not sustain the allegation that *money* was bet. Every penal offense must be proved as laid in the indictment. "Checks" are no nearer money than "bank notes." Money means only gold and silver. *See Pryor* v. *The Commonwealth,* 2 *Dana,* (*Ky.*) 298; 1 *Bish. Cr. L.,* sec. 221; 14 *U. S. Dig.,* p. 330, *secs.* 17, 20.

2d. The court misdirected the jury in material matters of law.

The court charged in effect that the jury should convict the defendant as the keeper of a faro-bank, if he *appeared* and acted as the one having control. This is a charge to convict on appearances alone.

6. The verdict is contrary to law and evidence.

We will consider instruction 22, under this head. It is a well-established principle that the proof must support the

material or descriptive allegations of an indictment, and if there is a variance in the allegations and proof it will be fatal. The grand jurors who found the bill in this case, returned that the persons who were permitted to bet, were persons whose names were to them unknown. The evidence in the case shows that the names of all or part of the persons who bet at faro were known to them before finding the indictment.

"To support the description of 'unknown,' it must appear that the name could not well have been supposed to have been known to the grand jury." *Reg.* v. *Strowed, C. and K.*, 187; *U. S.* v. *Stetson*, 3 *W. and M.*, 164; 12 *U. S. Dig.*, sec. 55; *Barkman* v. *The State*, 8 *Eng.*, [13 *Ark.*,] 703; 14 *U. S. Dig.*, p. 330, sec. 27; *Jetson* v. *The State*, 14 *Ark.*, (1st *Barb.*) 555; 15 *U. S. Dig.*, sec. 14, p. 299; *Whar. Cr. L.*, 251, 256, (4th ed.); *The State* v. *Irwin*, 5 *Blackf.*, 343.

This question arose in Indiana, on an indictment for gaming, and the court said, "We conceive that the third person's name is required in such cases, not because he is injured, but because his designation is a material part of the description. We think it is important in such cases, that the indictment should, if possible, allege the name of the third person, in order that the accused may be the better apprised of the charge against him. If the name be not known, that circumstance should be stated in the indictment, as an excuse for omitting the name." *Butler* v. *The State*, 5 *Blackf.*, 280; *State* v. *Jackson*, 4 *Id.*, 47.

The names of third persons in an indictment should be set forth if they are known to the grand jury; if they cannot be ascertained, such persons should be stated as certain persons to the jurors unknown. *The State* v. *Irwin*, 5 *Blackf.*, 343.

If the person be described as one whose name is unknown, and it be proved that he was known, the variance is fatal, and the prisoner will be acquitted. *Leach* 339,

*note a,* 252, 3; 3 *Greenl. Ev., sec.* 22; *East Pl. C.,* 593, *Ky. & Mo. C. C.,* 257.

*H. W. Ide,* District Attorney, 1st Jud. Dist., for appellee, submitted:

The questions raised by the special plea, are,

I. Does subdivision 5 sec. 2, p. 124 of the Laws of 1864, repeal by implication the general law of the state upon the subject of gaming, and divest the Criminal Court of Leavenworth county, of jurisdiction over that subject, as to offenses arising within the limits of the city of Leavenworth?

*a.* To be repealed by implication, the statute must be inconsistent with and repugnant to, the later act, as courts do not favor the repeal of statutes by implication. 3 *Pick.,* 172; 13 *Id.,* 343, 8; 20 *Id.,* 407; 24 *Id.,* 296; 9 *Cow.,* 437; 5 *Hill,* 221; 5 *Ind.,* 162; 6 *Port.,* 219; 3 *Gill.,* 138.

*b.* It has no such effect. 10 *Ohio,* 453; 1 *Mo.,* 255.

*c. Query.* Has the city any right to punish by fine for keeping a gaming table? Is not its authority confined to a mere abatement of the nuisance? *City of Mount Pleasant* v. *Breeze,* 11 *Iowa,* 399.

2. What is the proper construction of that part of sec. 14, p. 130, Laws 1864, applicable to this case?

*a.* It means either that the recorder has the exclusive right to hold *preliminary examinations* of all offenses arising in the city limits, or that he has the exclusive right *to hear and finally determine* such offenses.

*b.* The language is not as clear as it might be, but we think the meaning is apparent, and is this: that the recorder shall have exclusive jurisdiction to hold the preliminary examination.

*b.* If any other construction be given to it, then it follows that the grand jury cannot indict, nor the Criminal Court try a party for an offense committed in the city, unless the recorder has first taken jurisdiction of the case.

*c.* But in that event, the Criminal Court would have no jurisdiction whatever over the matter, for the recorder once getting jurisdiction of the crime, he would be authorized if not required, to retain that jurisdiction until the action was finally disposed of.

*e.* Wherefore, it would follow that the recorder must try all parties for offenses committed within the city, whether those offenses be murder or treason.

*d.* But (and courts consider *a posteriori* arguments in construing statutes where the meaning is doubtful,) the recorder's court is not a court of record, it has no seal, nor clerk, nor stated terms, nor records, but such as are kept by justices of the peace, and all jury trials are by a jury of six men. The provisions of the code of criminal procedure, are not made applicable to the recorder's court, but section 20, p. 131, Laws 1864, provides, that in all cases not otherwise provided for, the process and proceedings before judgment, shall be the same as in justices courts in criminal cases. Can it be possible, the legislature ever intended that a man should be tried for murder in such a court as this?

II. The questions raised by the motion to exclude evidence under the indictment and to arrest judgment are the same, and all go to the sufficiency of the indictment. Three points are made.

1. That the indictment does not state in the language of the statute, that the gaming table called a faro-bank, was " adapted, devised and designed for the purpose of playing games of chance." This is not necessary. 1 *Kansas Rep.*, 477.

2. That it does not state that any betting or playing was actually done on the gaming table. It does, however, state that the defendant induced and permitted divers persons whose names are to the jurors unknown, to bet and play upon said table. This allegation is in the language of the statute, and if the words are construed in their usual

acceptation in common language as section 93 of the Criminal Code requires, it is clear that there is an allegation, that both betting and playing were done upon the table. Any other construction is mere hyper-criticism.

*a.* Allegations of this kind, in the language of the statute, are sufficient. 3 *J. J. Marshall*, 133 ; 3 *Blackf.*, 307, 294 ; 5 *Id.*, 502 ; 33 *Mo.*, 92.

*a. a.* It is not necessary to allege that any betting or playing was done. *State* v. *Fulton*, 19 *Mo.*, (4 *Bennett*) 680, 3 ; *State* v. *McGaffey*, 4 *Texas*, 156, *Vol.* 16, *U. S. D.*, *p.* 333 ; *State* v. *Vinyard*, 13 *Geo.*, 396, *Vol.* 14, *U. S. D.*, *p.* 399 ; *State* v. *Clark*, 19 *Ala.*, 552 ; *State* v. *Miller*, 5 *Blackf.* 502.

*b.* Our statute under which the indictment is found, having been taken from the statute of Missouri, the construction given to it in 19 Mo., 680, should be followed by our courts. 1 *Kan.*, 248-9.

3. That it does not state that any money or property was actually bet.

*a.* If the second objection is not good, of course this is not.

III. A number of questions are embraced in the motion for a new trial. But before considering them, we claim they were waived by the motion in arrest having been made first. *Whart. Crim. Law*, sec. 3225.

*a.* The instructions of the court to the jury, were all proper. The rejected instructions asked by the defendant, which were not covered by those given by the court, were each, taken as a whole, erroneous. Some of them contained that which is law, but the good and bad were so mixed up, that each as an entirety, was bad.

*b.* Instructions of this kind may properly be refused by the court. 1 *Kan. R.*, 125, 2 *Ohio S. R.*, 593.

*c.* It is claimed by the defendant, that the allegation in the indictment, that the names of the persons induced and permitted to bet and play on the gaming table, were un-

known to the grand jurors, was a material allegation, to go before the petit jury, and therefore, that the court erred in refusing the instruction asked upon that question.

*d.* The instruction as asked was clearly improper. (See instruction 22). To illustrate:

The State had a right to, and did show that the defendant not only kept the faro-bank on the days charged, and at such times permitted parties to bet and play thereon, but that he kept it for a number of months prior thereto, and during that time, permitted parties to bet and play thereon. But proof that the defendant kept the bank on the 1st day of November 1864, and on that day permitted parties (whose names the grand jurors could not ascertain by reasonable diligence) to bet or play thereon, would sustain the indictment and require the jury to convict, but under the instruction as asked, if it should appear that the grand jurors could by reasonable diligence have known the names of persons permitted to bet at *any* of the times disclosed .by the evidence prior to the 1st of November, then the jury would have to acquit. ,

*e.* But we claim that it is not necessary to state in the indictment the names of the persons permitted to bet or play. If it be not, then it is not necessary to allege that the names are unknown, and if such an allegation is made, it is mere surplusage and need not be proved, nor need any instructions be given upon the matter. 1 *Chitty Crim. L.*, *p.* 216; 3 *Sumner*, 12; 1 *Mo. R.*, 372, (524); 6 *Id.*, 206; 10 *Id.*, 744; 4 *Texas*, 156; 24 *Id.*, 161; *Vol.* 21 *U. S. D.*, 277; 5 *Yerg.*, 184; 8 *Humph.*, 66; 14 *Ind.*, 109; 11 *Id.*, 517; *Romp* v. *State*, 3 *Iowa*, (*Greene's*) 276; *State* v. *Prescott*, 33 *N. H.*, 212; 17 *Ill. R.*, 160; 2 *Carter*, 308; 3 *Blackf.*, 307, 294; 4 *Bibb.*, 261; 21 *Ill. R.*, 125; *People* v. *Adams*, 17 *Wend.* 475; 3 *J. J. Marshall*, 133.

On this point, the construction given in 1 Mo., 372, (524), will be followed by our courts. 1 *Kan.*, 248-9.

.*f.* But should this court hold that the refusal of the judge

to give the instruction asked was erroneous, did it not relate merely to a technical defense, and not to the merits of the action; and therefore, was it not such a technical error as this court is required to disregard by section 276 Code Criminal Procedure?

*g.* Instruction No. 7 refused, says in substance, that unless every allegation in the indictment, except that of time is proved, the jury must acquit. This would require the State to prove, that the defendant set up and kept the table; that the parties bet and played on the table; that defendant induced and permitted such betting and playing; that parties bet and played upon the table, and at and upon the game played upon or by means of the table. But proof of either of these propositions is sufficient. It would also require the State to prove that the persons induced or permitted to bet or play, were idle and evil disposed persons.

No. 10, says it is necessary to show that the game of faro is a game of chance.

In answer to this, we say 1st: It is not necessary to show that any game was actually played, (see *a. a.* head II.) and therefore, it is immaterial whether faro is a game of chance or skill. 2d. The statute says *any* game, and therefore, proof that the game of faro was played, would bring the case within the statute, and the further inquiry as to the nature of the game, would be wholly unnecessary.

No. 14. Substance is, that if the defendant set out the table, and played a game thereon with others, and wins or loses in the game, then the jury must acquit. This is rather a novel proposition, all things considered. Had it said, "if the defendant *only* set out the table, &c., then the jury must acquit," it would not have been far from right. But as it is, the jury are required to acquit if those facts are proved, no matter what other and further facts are shown, even though they conclusively establish guilt.

No. 15, says a party who has no interest whatever in a

faro-bank, may be the keeper thereof, (which is all very true,) and then illustrates the proposition with a supposed case, as where he barely deals the cards for the real banker. (The illustration hardly sustains the proposition, but as the defendant's own law, perhaps the State ought not to complain). It closes by saying, such a person (that is, a person who has no interest in the bank) cannot be considered as having set up such bank.. We say all are principals in misdemeanors, and a person acting as the mere servant or agent of another, and having no interest in the same, may be guilty under the statute of having set up a gaming table. But whatever evidence there was tending to show the defendant's connection with the faro-bank, related entirely to the keeping thereof by him.

No. 18, contains two propositions: 1st. That the jury must acquit unless the defendant *set up* the faro-bank. This is bad, because proof that he set it up, or *kept it*, would sustain the indictment.

No. 21. After a long definition of the term property, says jury must acquit unless property as therein defined, was bet on the bank. This is bad, because the betting of either property or money, would be sufficient. The court gave the proper instruction. See No. 6. Besides, if point 3, head II. is correct, then it is bad for that reason.

No 23, says if "chips" or "counters" which had been purchased of the defendant for money, were used in betting, then the jury must acquit. As to this proposition, *see point 3, head II., and also Bishop's Crim. Law, Vol. 2, sec. 524; 7 B. Monroe, 44; 7 Porter, 463; 14 Texas, 381.*

No. 24. This as an abstract proposition may be correct, but there was 'no evidence whatever, as to the *table* being commonly called the "tiger." One witness did say, the game of faro was sometimes called "bucking against the tiger." It is no error for the court to refuse instructions on abstract questions not bearing on the case.

*By the Court,* CROZIER, C. J.

This was a prosecution in the Criminal Court of Leavenworth county, against John T. Rice, under the following section of the Crimes Act, to-wit:

"Sec. 230. Every person who shall set up or keep any table or gambling device, commonly called A. B. C., faro-bank, E. O., roulette, equality, or any kind of gambling table or gambling device, adapted, devised and designed for the purposes of playing any game of chance, for money or property, and shall induce, entice or permit any person to bet or play at or upon any game played at or by means of such table or gambling device, or on the side of or against the keeper thereof, shall on conviction be adjudged guilty of a misdemeanor, and punished by imprisonment in a county jail not exceeding one year, and by fine not exceeding one thousand dollars."

The following was the indictment:

THE STATE OF KANSAS, }
          *v.*              } *Indictment.*
BALTY RICE.           }

The grand jurors for the state of Kansas, and in and of the county of Leavenworth, duly impanneled, sworn and charged to inquire of offenses committed within said county, in the name and by the authority of the state of Kansas, upon their solemn oaths, do present, that Balty Rice, late of said county, in the county of Leavenworth, and within the jurisdiction of the court, on the first day of November 1864, and on divers other days and times between that day and the day of finding this bill, unlawfully and injuriously did set up and keep a certain gaming table, commonly called a faro-bank, for gain, and to play for and win and gain money, and did then and there, to-wit: on said first day of November, A. D. 1864, and on said divers other days and times between that day and the day of finding this bill, unlawfully and injuriously induce divers idle and ill-disposed persons, whose names are to the

grand jurors unknown, to bet and play at and upon said gaming table, commonly called a faro-bank, and to bet and play at and upon a certain game commonly called faro, played at and by means of said gaming table commonly called a faro-bank, to the corruption of good morals, and the common nuisance of all the citizens of the state residing in the neighborhood.

H. W. IDE, DIST. ATT'Y,

*First Judicial District.*

To this indictment the defendant below filed a special plea, denying the jurisdiction of the court, to which plea a demurrer was filed and sustained by the court. The defendant was allowed to put in a plea of not guilty, and the cause having been tried by a jury, the defendant was convicted. Motions were made for a new trial, and in arrest of judgment, both of which were overruled and judgment rendered against the defendant.

Upon the trial the court charged the jury as follows:

"The defendant is charged with keeping a certain gaming table commonly called a faro-bank. Section 230 of the 'Act concerning Crimes and Punishments,' is the one under which this case is prosecuted. Every person who shall set up or keep any table or gambling device commonly called A. B. C. faro-bank, E. O. roulette, equality, or any kind of gambling table, or gambling device, adapted, devised, and designed for the purpose of playing any game of chance, for money or property, and shall induce, entice, or permit any person to bet, or play at or upon any such gaming table or gambling device, or at or upon any game played at or by means of such table or gambling device, or on the side or against the keeper thereof, shall, on conviction, be adjudged guilty of a misdemeanor, and punished by imprisonment in a county jail, not exceeding one year, and by fine not exceeding one thousand dollars.

The defendant is presumed to be innocent of the offense charged, and before you are warranted in a verdict against

him, each one of the facts which go to make up the offense charged, which are essential parts of the offense, as set forth in the indictment, must be established by the testimony introduced before you, to your satisfaction beyond any reasonable doubt. The transaction complained of must have taken place within the limits of this county to give jurisdiction to this court, and within two years prior to the commencement of this prosecution, December 9th, 1864, to avoid the statute of limitations. It must appear from the testimony,

1st. That at the place mentioned by the witness a gambling device or instrument was in existence.

2d. That that gambling device was what is generally known as a faro-bank.

3d. That the defendant was the keeper of that faro-bank.

To establish the fact of one being the keeper of a faro-bank, it is sufficient to show that he appeared thus acting as the one having control, in charge, superintending the same. It is not necessary to show that he was actually the owner.

4th. That the defendant being the keeper, kept such gambling device for the purpose of gain.

5th. That defendant being the keeper and keeping the said device for purposes of gain, induced or permitted other persons to bet and play upon such gambling device either on his side or against him."

To this charge the defendant excepted and asked the court to charge the jury as follows:

"1st. That to constitute the offense charged in the first count of the indictment, it is necessary that the particular gambling device, alleged to have been set up and kept, shall have been adapted, devised, and designed for the purpose of playing any game of chance, and that as necessary to constitute the offense, it is necessary to allege in the indictment that the particular gambling device, charged to

have been set up 'and kept, was adapted, devised and designed, for the purpose of playing any game of chance, and that the indictment, not containing the said words, or others ' conveying the same meaning,' the said defendant cannot be convicted under the said indictment.

2d.   That to constitute the said offense it is necessary that the said gambling device charged to have been set up and kept, shall have been adapted, devised, and designed for the purpose of playing any game of chance, for money or property, and that it shall be alleged in the indictment; that no such averment being made, nor other words therein used ' conveying the same meaning,' the defendant cannot be convicted under the indictment.

3d.   That if the jury believe from the evidence in this case that the offense · charged, if committed at all, was committed within the corporate limits of the city of Leavenworth, then this court has no jurisdiction thereof, and the defendant cannot be convicted under the indictment.

4th.   That to constitute the offense charged in the indictment, it is necessary to be alleged therein, that some person or persons did actually bet and win or lose money upon the particular gambling device, alleged to have been set up and kept, and that no such allegation being made in the said indictment, the said defendant cannot be convicted under said indictment.

5th.   That unless the jury believe from the evidence in this cause, that the said defendant did set up and keep a gambling device, such as charged in the indictment, ' adapted, devised and designed for the purpose of playing any game of chance,' they cannot find him guilty, under said indictment.

. 6th.   That unless the jury believe from the evidence that money or other property was actually bet and lost upon such gambling device, alleged in said indictment, they cannot find the defendant guilty under said indictment.

7th. That it is necessary, in order to convict the defendant, that every material allegation of the indictment should be proved, beyond a reasonable doubt; that allegations not material to be made, may become material to be proved when they are alleged in the indictment; that every allegation herein, except that as to the particular date of the offense, is material, and that unless the jury shall believe from the evidence, every allegation therein, except as above [excepted, they cannot find the defendant guilty.

8th. That in order to convict the defendant under the indictment, the State must establish by evidence to the satisfaction of the jury, and beyond a reasonable doubt, that the defendant did set up or keep a gambling device; that such gambling device was commonly called "faro-bank;" that the faro bank was a gambling device, adapted, devised and designed, for the purpose of playing at a game of chance, for money or property; that the defendant did induce, entice or permit any person or persons, to bet at or play at or upon said faro-bank; that such person or persons having been induced, enticed or permitted by the defendant to bet or play upon said faro-bank, did bet money or property on the side of the keeper, or did bet money or property against the keeper.

9th. The mere keeping such a device, commonly called faro-bank, in the defendant's house or room, is no offense under the statute.

10th. The jury must be satisfied from the evidence, beyond a reasonable doubt, that the game of faro is a game of chance and not of skill.

11th. If the State fails to establish by legal evidence, that a game of chance was played upon a gambling device, called faro-bank, for money or property, on the side of or against the keeper, then the jury must acquit the defendant under the indictment.

12th. The setting up of a gambling device or table, called faro-bank, is no offense under the statute on which

the indictment is found, unless a game be played, and money or property bet.

13th.  Simply setting out a table, or putting upon it a pack of cards, would not be setting up a gaming table or faro-bank.

14th.  If the jury believe, from the evidence, that the defendant set out the table and placed on it the cards, and a game is played, the defendant participating in the game, and wins or loses money or property, yet they may acquit the defendant; he may be a bettor against the bank.

15th.  A person may keep a faro-bank who has no interest whatever in it.  He may barely deal the cards for the real banker.  Such a person could not be considered as having set up a bank or gaming table.

16th.  If the jury shall find from the evidence that chance enters into the game of faro, but that there is more skill than chance in it, so as to characterize it as a game of skill, they must find the defendant not guilty.

17th.  If the jury have a reasonable doubt whether faro is a game of chance or a game of skill, they ought to find the defendant not guilty.

17½.  Where the statute speaks of a gaming table or device for a particular purpose, it is not within the act, unless the possessor of it intends to employ it for that purpose.

18th.  To convict the defendant the jury must be satisfied from the evidence that the defendant did set up the device in question, and the jury must be satisfied from the evidence that the device is such, as was devised, adapted and designed to play a game of chance.

19th.  If the State fails to satisfy the jury from the evidence that property was bet at said game of faro, but does satisfy the jury from the evidence that notes or bank bills, or checks were bet at said game; yet this would not be sufficient under the statute to establish that money was bet on a game of chance.  The term money has a technical

meaning, and means nothing but lawful money of the United States. And the State must by legal evidence establish to the satisfaction of the jury, that legal or lawful money was bet at the game of faro.

20th.  A charge of playing for money is not made out by proof that the by-standers were betting, but that the defendant was not interested in any stake.

21st.  The term property, as used in the statute upon which the indictment is made, includes 'personal property,' or 'real property,' and personal property is to be construed to mean goods, chattels, effects, evidences of rights in action, and all written instruments, by which any pecuniary obligation, or any right or title to property real or personal, shall be created, acknowledged, assigned, transferred, increased, defeated, discharged or diminished; and real property includes every estate in trust, and rights in lands, tenements and hereditaments. If the jury are not satisfied beyond a reasonable doubt, by the evidence, that property defined as aforesaid, was bet at the game of faro, or at or upon a faro-table, then the jury should acquit the defendant.

22d.  If the jury believe from the evidence that the defendant induced, enticed, or permitted persons to bet at the game of faro, or at or upon a table commonly called faro-bank, and that the name or names of such persons were known to the grand jurors at the time of finding the indictment against the defendant, or if the grand jurors could by reasonable diligence and inquiry have known the names of the persons who were permitted to bet on said game of faro, then they must acquit the defendant.

23d.  That if the jury believe from the evidence that the gaming device or table, charged to have been kept by the defendant was commonly called 'the tiger,' they cannot convict the defendant under this indictment.

24th.  That if the jury believe from the evidence, that for convenience, 'chips or counters' were used in betting

at the game—that the defendant gave these chips or counters to the players in exchange for money or its representative, that, nevertheless, the said defendant was not under any legal obligation to redeem the said ' chips or counters' when presented to him by the players, and that consequently the winning or losing of the chips or counters, was not a winning or losing of money, or property, under the requirements of the statute, and the said defendant cannot be found guilty under the indictment upon such evidence."

Of these instructions, those numbered six, nine, twelve, thirteen, seventeen and a half, nineteen and twenty, were given, and the remainder refused, to which refusal the defendant excepted.

The first error assigned, is that the court erred in sustaining the demurrer to the plea to the jurisdiction of the court.

The Criminal Court of Leavenworth county was established in March 1862, and there was conferred upon it the same jurisdiction in criminal matters that had been conferred upon the District Court of that county. This jurisdiction is prescribed by the latter portion of the first section of the act relating to the organization of courts of justice, found on page 454 of the Compiled Laws, and is in these words: "They," referring to the District Courts, "shall have original jurisdiction of all crimes and offenses except in cases of minor offenses, the exclusive jurisdiction of which is or may be possessed by justices of the peace, or that may be vested in courts inferior to the District Courts, and shall have power to issue remedial and all other processes." Other statutes give to justices of the peace jurisdiction to try minor offenses, and to the recorders of cities power to try offenses arising under city ordinances. There is no question made but that prior to February 24th, 1864, the offense for which the defendant was prosecuted was properly triable in the Criminal Court of Leavenworth county; but it is insisted that the act of

that date amending the general laws incorporating cities, deprived that court of all jurisdiction over the subject. The fifth clause of the second section of that act gives to the city council the power " to restrain, prohibit and suppress tippling houses, billiard tables, ten-pin alleys, houses of prostitution and other disorderly houses and practices, *games and gambling houses*, desecrations of the Sabbath day, commonly called Sunday, and all kinds of public indecencies." This clause, it is claimed, gives cities the exclusive power to declare the keeping of gambling houses within their limits to be offenses, and to provide for the inflicting of punishments therefor; and especially so in this instance, as the case arose in the city of Leavenworth, that city having enacted an ordinance to carry out the power. To this it is a sufficient answer to say that the power conferred upon the city council is not exclusive in terms, and cannot, by implication, be so extended as to nullify the plain provisions of a statute not in conflict with it. The law under which this prosecution was instituted authorized a fine as high as one thousand dollars, while the city cannot impose and enforce one to exceed one hundred dollars. Can it then be reasonably supposed that the legislature intended in this indirect manner to change the law as to the extent of the fine? We cannot think so. The evident intention was to give to city authorities power *concurrent with* that of the state authorities to suppress these pestiferous evils, and not to confine it to either. The question is not, whether when the city shall have exhausted its power in a given case, the state can inflict punishment for the same offense? But whether *either* may not inflict the prescribed penalty. It is not necessary in this case to decide whether both can punish for the same act; but we have no doubt but that the one which shall first obtain jurisdiction of the person of the accused, may punish to the extent of its power.

But the appellant claims that the fourteenth section of

the act of 1864, deprives the Criminal Court of jurisdiction. The clause relied upon is in these words: "The recorder shall, by virtue of his office, be a justice of the peace, and shall have all the powers conferred or to be conferred by law upon justices of the peace, except in civil cases. Said recorder shall have exclusive jurisdiction to hear and determine all offenses against the ordinances of the city, and all cases of misdemeanors under the laws of the state, arising within the limits of said city, in which the fine which may be imposed does not exceed one hundred dollars or the imprisonment one year, and shall have exclusive original jurisdiction of all offenses against the laws of the state committed within the limits of said city."

It was earnestly insisted upon in the argument that this latter clause took from the Criminal Court all power and jurisdiction over offenses committed within the city of Leavenworth, and conferred it upon the recorder of that city; that that officer alone has jurisdiction to try every offense, from murder in the first degree down to petit larceny, which shall arise within that city. The "recorder's court" is not a court of record; he is not authorized to summon a grand jury; he cannot impannel a petit jury exceeding six in number; for murder in the first degree he could not inflict a penalty beyond a fine of one hundred dollars and imprisonment for one year; so that the construction contended for would result in letting the murderer go scotfree, and punishing the man, who in a moment of passion should inflict a slight scratch upon the hand of his neighbor. We cannot attribute to the legislature the intention to accomplish an object so manifestly impolitic and disastrous, unless the language they have used compels us so to do. This court and every other court is bound to carry into effect the will of the legislature when that will is not in contravention of the paramount law; and in this case, if we were convinced that it was the intention of the law-makers to bring about a state

of affairs like that sketched above, it would be our duty to carry out that intention however much we might deprecate the result. We cannot look to the consequences of an act of the legislature for the purpose of determining its validity; but we may look to them, if they will throw any light upon the intention of the law-maker.

We agree with counsel for the appellant that the language of the latter clause quoted above seems to favor their construction; and were there nothing else in the act or in other acts upon the subject, we would probably be bound to sustain their interpretation. The phrase "exclusive original jurisdiction," has a well ascertained legal signification, and were there nothing in the legislation to qualify it, we should be bound to agree with counsel that the only tribunal in which a person could be tried for an offense committed in Leavenworth, would be before the recorder of that city. But considering the whole sentence in which the phrase occurs, such evidently was not the intention of the legislature. The first clause confers upon the recorder all the powers of a justice of the peace in criminal matters; *i. e.* the general power to inquire into the commission of offenses and to hold to bail, &c. The second clause gives him exclusive jurisdiction of offenses against the ordinances of the city, and exclusive jurisdiction of misdemeanors under the laws of the state, arising within the city, where the law does not authorize a fine exceeding one hundred dollars, or imprisonment exceeding one year. Under the first clause he has jurisdiction concurrent with any other justice of the peace in the county, to institute preliminary examinations and hold to bail for offenses greater than those described in the second clause, committed in the county outside of the city; and were there nothing in the section but the first two clauses, this concurrent jurisdiction would extend to the whole county, including the city.

Having given the recorder all the powers of a police

judge, under the ordinances, and having conferred upon him the exclusive power to punish for minor offenses committed within the city; and also having provided him or authorized him to be provided with the necessary ministerial officers and machinery, for the convenient dispatch of business, very good reasons might be given for conferring upon him the exclusive power to institute preliminary examinations and hold to bail for all greater offenses committed within the city; and it seems to us that such was the intention of the legislature in adding the last clause. If the object was such as contended for by counsel for the appellant, there was no necessity for the latter part of the second clause. "Exclusive original jurisdiction of all offenses" under the counsel's construction, would include the power to punish for minor offenses as well as greater ones; but it would be hardly in accordance with the intelligence generally conceded to legislatures to suppose that they intended to provide twice for the same thing in succeeding clauses of the same sentence. In the absence of absolute compulsion we will not so presume, although the words used in their technical sense, might seem so to require.

Therefore looking at the whole section, construing it all together, and with reference to existing laws, we are of opinion that the legislature intended by the latter clause of the sentence referred to, to confer upon the recorder the exclusive power to institute preliminary examinations and hold to bail for the higher crimes committed in the city of Leavenworth, and not thereby to give him sole power to try every grade of crime which might be committed in that locality. Hence the demurrer to the plea was properly sustained.

After the jury had been sworn and a witness was put upon the stand, the appellant moved the court to exclude all testimony under the indictment, on the ground that a public offense was not charged against him. Although

the indictment may have been defective it would not have been correct practice to have considered the question at that stage of the proceeding or when presented in that manner. The proper way to raise the question of the sufficiency of the indictment before verdict, is by motion to quash; after verdict, by motion in arrest of judgment. Of course a question of the jurisdiction of the court may be presented at any time. We do not pretend to say that it would be error to sustain the motion made under the circumstances, indicated; but we do say that overruling the motion would not be error. If the court could clearly see that in case a verdict were rendered against the defendant the judgment must be arrested, and that therefore further proceeding in the trial would be a useless consumption of time, it would be proper to arrest the case. But ordinarily, the court should not stop in the midst of a trial to consider the indictment. If the defendant neglects to make his motion to quash, he should be made to wait until he may present his objection to the indictment by a motion in arrest of judgment. In this case we are unable to see that the appellant was prejudiced by the denial of his motion.

After the verdict the appellant moved in arrest of judgment on the ground of the insufficiency of the indictment, which brought before the court in a legitimate way the question presented by his former motion, the overruling of which motion makes it necessary for us to consider the indictment.

The first objection urged, is that the seventh section of the act of February 12th, 1864, abolishing grand juries, makes it optional with the judge of the court whether a grand jury shall be summoned; and for that reason the former statute on the subject of grand juries is void, as not having a uniform operation throughout the state. The complaint is not that the act of 1864 is inoperative, but because of the seventh section thereof, the whole

grand jury machinery of the former statute, is abrogated, and hence there can be no legal grand jury.

We cannot see the force of the objection. Which law is it that has not a uniform operation throughout the state? It cannot be the former statute, because wherever a grand jury shall be summoned within the state it must be done according to that act. It does not provide when or how frequently they shall be summoned. Thirty days before the holding of a court at which the jury shall be required by law, the names of the persons to compose it shall be drawn. The seventh section above referred to says that the term of the court for which the jury shall be drawn, shall be that designated by the judge. The old statute provides the machinery; the new one authorizes the judge to put it in motion. The old law applies to all grand juries; the new one to all judges of courts of record having criminal jurisdiction. This looks to us like uniformity of operation.

Another objection to the indictment is that it does not allege that the faro-bank was a gambling device, "adapted, devised and designed for the purpose of playing any game of chance for money or property." The statute prescribes a penalty for keeping a faro-bank, calling it a "gambling device;" *i. e.* an institution devised for gambling purposes. The legislature took cognizance of the fact that it was "adapted, devised and designed for the purpose of playing a game of chance for money or property," and hence by name denounced it. If other devices than those named, are set up, they must be charged to be "adapted, devised," &c.; *i. e.* they must be described so as to show them to be "gambling tables or devices."

It is objected further that the indictment does not allege that money or property was bet or lost or won upon the device. It is alleged, however, that persons did bet and play at the game. What could be bet but "money or property," and how could any body "play" at the game

without losing or winning money or property. It is un-
necessary to examine this objection further.

After the testimony was all in, the court charged
the jury in the language set out in a former part of this
opinion. This court has examined that charge care-
fully without being able to detect any error in it. It is
full, clear, comprehensive, well worded and in excellent
judicial taste; and we do not recollect in our reading a
better specimen of juridical literature. Even counsel find
but a single objection to it, and that is founded upon a
misconception of the third clause. The court does not say
that it will be sufficient if the defendant appeared to have
the control, &c., but that if he " appeared there acting as
the one having control," &c., i. e. that he conducted
himself there as the one having control, &c., it will be
sufficient. A reasonably intelligent jury could not mis-
take the meaning of the court.

We have also carefully examined the twenty-fourth in-
struction asked by the defendant, and counsel will not ac-
cuse us of a want of that respect due from the court to its
bar when we suggest that some of these charges were
framed without due consideration. For example: in the
first two and fourth, the court is asked to say to the jury
that the indictment is not sufficient. Now if no offense
was charged, there was no issue for the jury to try, and
they could render no verdict. The judge in effect, was
asked to say to the jury: I have the right to determine
whether the indictment charges an offense. There is no
offense charged and no issue joined, therefore you must
find the issue joined for the defendant. This could hardly
be said to be correct practice. Had the indictment been
determined insufficient, probably the better course for the
court to have pursued would have been to quash it, and
either discharged the defendant or held him as the law
provides, to answer to another indictment.

Some of the other instructions embodied legal proposi-

tions proper to be given to the jury; but all such which were refused were included in the charge already given, and the court was not bound to repeat them in a different form.

Special attention has been called to the twenty-second instruction asked. We are well aware of the general rule upon which it is predicated. It originated from the principle that the defendant had a right to be informed of the accusation against him, but it ultimately hardened into an arbitrary rule and was applied in cases where the reason of its original adoption did not obtain. The divergence was at first almost imperceptible, but it continued to widen until the rule became as applied to many of the cases, purely technical. The same may be said of many others of the common law, which in a spirit of more liberal and reasonable policy have been entirely swept away. Courts have latterly to a greater extent disregarded technical rules where the reason of their adoption did not exist, and it is one of the glories of modern jurisprudence that the substance shall not be sacrificed to forms.

In this instance it is difficult to discover a good reason for applying the rule in its common law rigidity. The only person whose name the evidence clearly shows to have been known to the grand jury was a witness at the trial. The defendant had all the notice that the insertion of the witnesses' name in the indictment could have given him, so that it is difficult to see how he was prejudiced by the refusal to give the instruction.

In addition to these considerations, the statute of the state imperatively requires this court to disregard technical errors and defects and exceptions which do not effect the substantial rights of the parties. We are as much bound to give effect to this provision as any other in the laws. Its object is to give to this court the same right to disregard technical rules, that the court that originally adopted them had to cease to force them after they be-

came technical. It merely puts into the form of a statute the axiom that the rule ceased with the reason of it.

We think the defendant has had a fair trial before the proper tribunal, that he was sufficiently informed of the accusation against him, that the evidence clearly shows his guilt, and that there was no error or defect in the proceedings which prejudiced his substantial rights. The judgment will be affirmed.

All the justices concurring.