## JOSEPH P. ROOT *vs.* S. S. BRADLEY.

Goodrich gave the note in suit to Bradley, defendant in error, dated March 4th, 1858, due in thirty days, which was guaranteed by Root, plaintiff in error. Smith was indebted to Goodrich for rent. By agreement between the three Smith was to board Bradley and apply his bill therefor on this note and thus pay his rent. Goodrich died in August, 1858, and Root was appointed his administrator. In probate court the amount of the board bill, which run before and after the death of Goodrich, was applied in payment on the note and indorsed thereon by his direction. A part of this board bill accrued within three years next before the commencement of the action on the note by Bradley against Root, individually, in the court below.

*Held,* that the payment, to the extent of the board bill, was perfect, and that the indorsement thereof on the note was merely an admission, by the holder of the note, of a payment already made. *Held,* that the direction of Root, as administrator, to have the payment indorsed, could not affect his right to plead the statute of limitations, in an action on the note against him individually, for the balance. *Held,* that the amount applied on the note for the board had, after the death of Goodrich, might be regarded as a payment by the administrator, under direction of the probate court.

Where the community of interest has been severed by the death of a joint contractor, payment by the executor or administrator of one of the two joint promisors, will not take the note out of the statute, as against the surviving contractor. *Held,* that the payment by Root, in the case at bar, is not an " acknowledgment of an existing liability, debt or claim, or a promise to pay the same," under section thirty-one of the civil code. *Held,* that the rendition of judgment therein against him in the court below, over his answer, setting up the statute of limitations against the note, was error.

The decision in *Elliott vs. Lochnane et al.,* that the limitation law of February 12th, 1858, applies to causes of action existing when it was passed, and that the time for commencing such actions was extended one year, sustained, and *held* to be decisive of the point in case at bar, arising under the statutes of 1859.

Smith applied to the defendant below, as administrator of Goodrich, to allow his claim for the board of Bradley, that the same might be settled. The defendant below said that if the probate court would allow the claim he had no objection to allowing it, and the claim was presented and allowed, and

thereupon indorsed on the note pursuant to the original agreement with Goodrich, by A. B. Bartlett, attorney of defendant below, in the matter of said Goodrich's estate, and with the consent and by the order of defendant below. The facts of the case further appear in the opinion of the court.

*Cooper & Stockton,* for plaintiff in error. -

The note upon which this action is founded, was, upon its face, barred by the statute, when this action was commenced, hence the defendant in error must prove affirmatively an acknowledgment or promise within three years. A payment is evidence of an acknowledgment of the debt, and is taken as an acknowledgment.

I. Our statute requires the signature of the party to be charged to an acknowledgment or promise in writing; hence the acknowledgement or promise of one joint promisor will not bind his co-promisor, or if one joint promisor may not bind his co-signer by an express acknowledgment in writing, can he do so by paying one penny on the contract? This would convict our legislature of a great inconsistency.

II. A payment made by a part of the joint and several makers of a promissory note, within three years before suit is brought, and before the action is barred, will not renew or revive the debt as to the other makers. (*Barger vs. Davison,* 22 *Barb.,* 68; *Winchell vs. Hicks,* Western Law Mon., 1859, *p.* 469; *Vancuren vs. Parmala,* 2 *Coms.,* 523; *Seney's Code,* 55, *note* 6, *p.* 54, *note* 24.)

III. The plaintiff was surety. The only payment ever made was made by Goodrich, the principal, in his lifetime. The payment was small. The note is at six per cent. per month. The equities are all with this plaintiff.

IV. All that the plaintiff in error said about the note, the claim of Smith and the indorsement, was as administrator of Goodrich. He had no right or authority to say anything (except as administrator) upon the subject.

The plaintiff did nothing, and nothing that he could say, would remove the bar, or revive the note against him. (*Stat.*, 86, § 31.)

' If he had made the indorsement himself it would not have renewed the note, because not signed by him, and the payment was not made by him.

Any promise by him, as administrator, would be void, and could not revive a debt. (*Stat.*, *p.* 569, § 5.)

This plaintiff could neither create nor revive a liability by declaration, or anything he could say, in the face of the above statutes.

V. The facts show the payment by Goodrich. Suppose Goodrich alive, Root orders him to pay on the note—orders him to make an acknowledgment, or requests him to give a written acknowledgment or promise, Root would not be held thereby and the debt revived against him. The law requires his signature to revive as against him. Declarations or orders could not do it.

VI. The answer of defendant below, stands, by law, admitted, for want of a reply, and of course he should have a judgment.

This statute affects the mode of trial, and is to govern the court in all trials. After it takes effect it does not affect the contract at all.

*D. B. Hadley and A. B. Bartlett*, for defendant in error.

I. The answer of the statute of limitations does not need a reply. No reply is needed when there is no counter claim or set-off set up in the answer. (*Comp. Laws*, *p.* 141.)

Again: No exception was taken to the judgment of the court on that account; hence it would be waived, even if required. But there is a reply.

II. The indorsement of payment on the back of the note takes it out of the statute of limitations. (*Comp. Laws*, 129, § 31.)

III. The payment was made by Joseph P. Root in person, and it does not matter where he obtained his funds to pay with.

It is not for Bradley to inquire whether Root took his own or another person's funds to make the payment, so that it be actually made. Nor does it matter to either party whether the payment be made in cash or property, so that both parties be satisfied.

The simple question is, did the mind of Root know of and assent to the payment on the note? If so, it was an admission at that date that the balance on the note was due, equally as satisfactory as the act of signing the note originally.

If a note is presumed to be good in ʰlaw three years after it is acknowledged to be by the maker, in signing it, the presumption is equally strong that it is good three years after it is acknowledged to be still unpaid, by the act of making a payment upon it.

It shall stand good for three years after the maker has acknowledged, in any authentic way, that it is due.

The simple question is, did the maker of the note acknowledge, by the act of payment, that the note was, at that date, unpaid, and not whether he used his own or another's funds in making the payments. The bill of exceptions shows that the payment was made by order of Root, and indorsed by his attorney.

IV. Root occupied the double capacity of representing the estate of Goodrich and also himself. Therefore when he made the payment he bound both himself and the estate thereby.

The reason that the action is not revived against those makers of a note who do not join in a payment made by one of the makers, is, that the act of payment by one is not known to the others, or an acknowledgment by the others that the note is unpaid, while it is such acknowledgment against the one making the payment.

Root v. Bradley.

V. The indorsement of the note by Root at the same time it was executed by Goodrich, makes him one of the makers, and it is no matter whether he puts his name on the face or back. (13 *Ohio R.*, 228.)

VI. The law presumes that after the lapse of three years the claim is paid; but anything which rebuts that presumption, takes the case out of the statute. The statute has wisely defined what that shall be. *First*. An acknowledgment must be in writing. *Second*. A promise in writing. *Third*. Payment.

Now, why are these the only facts which will take a case out of the statute? Once a verbal promise or acknowledgment would answer the same purpose; but the reason why that is done away with must be that there was too great a liability to be mistaken as to what a party said a long time previous to a trial; but if the matter be put in writing, or a payment be actually made, *either act* is sufficiently authentic to leave no doubt as to the mind of the person paying or promising, being fully alive to what it was doing.

After the death of Goodrich, Bradley saw fit to be lenient with Root, all the while relying upon his note running three years from the indorsement, and only commencing his suit eleven days before the time expired. Shall Bradley be thrown entirely out of his claim because he saw fit not to oppress his debtor while he was unable to pay?

VII. The statute is not retroactive in its operation, and does not operate until it took effect, June 1st, 1859. (*Stats.*, p. 126-7, §§ 16, 18.)

Had it been intended to be retroactive, it would have said "*has accrued*," as well as "shall have accrued."

Upon principles of justice and expediency, all laws, including constitutional laws, should be prospective, and presumed to be so intended, and are construed accordingly, unless a retroactive operation is clearly indicated. (15 *U. S. Dig.*, 109, § 16; 2 *Ib.*, 801, § 179.)

By the Court, Cobb, C. J.   One Wm. Goodrich, on the 4th of March, 1858, made his promissory note to Bradley, the defendant in error, due thirty days after date, and Root, the plaintiff in error, guaranteed the payment of it at maturity. Goodrich died in August, 1858, after having made an arrangement with one Smith for boarding Bradley and applying the price of board on the note.   Bradley received board both before and after Goodrich's death, pursuant to that agreement.

Root, the plaintiff in error, became administrator of the effects of Goodrich, and Smith applied to him to allow his claim against the estate of Goodrich for that board.   Root said if the probate court would allow the claim he had no objection to do so.   It was presented and allowed by the probate court, and by Root's direction indorsed on the note, pursuant to the original agreement with Goodrich.   This action was commenced on the 30th day of August, 1861—more than three years after the note fell due—in the district court, to recover the balance of the note from Root.   Root sets up the statute of limitations as a bar, and the above facts appearing, the court rendered judgment against him for the balance of the note, which judgment the plaintiff in error now seeks to have reversed on the ground that the demand was barred, as to him, by the statute of limitations, which went into force the 1st of June, 1859.

The defendant insists that the statute does not apply to causes of action existing when it was passed.

In *Elliott vs. Lochnane et al.*, decided at the January term, 1862, this court held that the limitation law, passed February 12th, 1858, entirely similar to the present, except in the time necessary to bar an action, did apply to such causes of action, and that the time for commencing that action was extended one year, by the substitution of that act for the preceding one, prescribing a shorter limitation.   In that case the cause of action was in existence before the passage of the law of

1858, and we are unable to distinguish it in principle from the one at bar. The decision of that case, is, therefore, decisive of the point under consideration in this.

Was the case taken out of the operation of the statute by the indorsement made for board furnished to Bradley?

The record shows that Smith rented a house of Goodrich, and by agreement of Smith and Bradley and Goodrich, Smith was to board Bradley, in payment of his rent, and the price of the board was to be applied in payment of the note in question. Under that agreement, the board received by Bradley would operate as payment of Smith's rent to Goodrich, and as payment *pro tanto* of the note Bradley held against Goodrich. This agreement the probate court, in allowing Smith's account against Goodrich for boarding Bradley, sanctioned and adopted, and the payment of the note to that extent was perfect, without any indorsement upon it.

The indorsement was an admission by the holder of the note of a payment already made. It could affect no rights between the estate of Goodrich and Bradley, except to give the administrator of the former more ready means of proving a payment already made; and the request of Root, as administrator, to have such evidence (for that is what his diriction to make the indorsement amounts to) as clearly could not affect his right to plead the statute in an action against him individually for the balance of the note.

Section thirty-one of the code prescribes what shall be necessary to take a case out of the operation of the statute after the time, allowed by the act, shall have elapsed. It must be a payment of some part of the principle or interest, or " an acknowledgment of an existing liability, debt or claim, or a promise to pay the same," "but such acknowledgment or promise must be in writing, signed by the party to be charged thereby."

There is no pretence of any such acknowledgment or promise by Root, but it is argued that a payment on behalf

of Goodrich by the administrator of his effects, will take the case out of the operation of the statute; and as Bradley received board after the death of Goodrich and for a few days within three years before the action was commenced, which was applied on the note, this few days' board may, perhaps, be regarded as a payment by the administrator, under direction of the probate court, and as raising the question argued.

It was held by Lord Mansfield in *Whitcomb vs. Whiting,* (2 *Doug. R.,* 652,) cited in *Angell on Limitations,* (§ 248,) that the acknowledgment of one joint contractor would take the case out of the statute as to his co-contractor, and that precedent was long followed in England, and the doctrine indiscriminately applied to payment and other acknowledgment; and the English authorities have been followed to some extent in this country. But in England later decisions have shaken that doctrine. (*See Angell on Limitations, p.* 273, *note* 2 *to* § 260.) And in this country the current of modern authority is strongly in a contrary direction. (*See* §§ 259 *and* 260 *of same volume, and notes citing numerous cases.*)

But that question need not be decided here, as in this case the payment (if such it may be regarded) is made not by the joint contractor, but by the administrator of his estate, under direction of the probate court, and it has, we think, been constantly held, both in England and America, that where the community of interest had been severed by the death of a joint contractor, such admissions of a co-contractor would not bind the executor or administrator; nor those of the executor or administrator the co-contractor. (*See Angell on Lim.,* §§ 251, 252 *and cases there cited.*)

There is, therefore, neither payment nor other admission to deprive the plaintiff in error of the benefit of the statute.

The cause of action was barred, and the judgment against him is erroneous and must be reversed, with costs to the plaintiff, and the cause remanded to the district court with

directions to render judgment in favor of Root, the defendant, and against Bradley, the plaintiff, for the costs therein.

All the justices concurring.