## The State of Kansas, Appellant, vs. Lewis Hardin, Appellee.

The general words " gambling devices," in section two hundred and thirty of the act regulating crimes and punishments, used after the several gambling devices specially enumerated therein, *includes* only other implements of similar character, designed solely for gambling purposes. " A pack of cards " *held* not to be included.

An indictment charging that the defendant " did unlawfully suffer and permit a gaming device, to wit : a pack of cards, to be used for purposes of gambling and gaming in a house," &c.. kept by him, *held* not good on a motion to quash.

The facts of the case appear in the opinion of the court.

*W. W. Guthrie*, Attorney General, for the State.

The question raised is as to the sufficiency of the indictment in charging an offense.

The charge is " did then and there unlawfully suffer and permit a gaming device, to wit: a pack of cards, to be used for purposes of gambling and gaming, in a house called the ' Union Saloon,' kept and owned by him in the town of Seneca, by divers persons, and for divers sums of money to the jurors unknown," &c.

The statute is, that " every person who shall permit any kind of gambling device, adapted, devised and designed for the purpose of playing any game of chance for money, &c., to be used for the purpose of gaming in any house, &c." (*Act on Crimes and Pun.*, §§ 230, 232.)

The indictment charges that a gaming device, and specifying the kind, was permitted to be used by the defendant for the forbidden purpose.

The statute uses the language " any kind of gaming device."

The State of Kansas *v.* Hardin.

I. It is not for the court to take judicial knowledge that a "pack of cards" is not a gaming device, but a question for the jury, who are to say whether a "pack of cards" is "any kind of gaming device."

II. But under a like statute in Ohio, a like charge has been held good. (*War. Crim. Law, p.* 359, *note* 3.)

The object of the statute is to prevent gambling, and forbids the use of *any kind* of gambling device that may be used for the purpose sought to be prevented.

A pack of cards is a device generally used for that purpose.

A " device " is that which is formed by design—an artificial contrivance.

Such, certainly, is a " pack of cards," as much as any "strap " or "table."

Had the legislature intended to prohibit only those "devices" specifically enumerated, the language "or any kind of gaming device," &c., would not have been used in addition, nor the language " or at or upon any game played at or by means of such table or gambling device," clearly intending to prohibit the playing of games *by means* of devices, as well as *betting upon* devices.

*Elmore & Martin*, for appellee.

I. The indictment is under section two hundred and thirty of the act on crimes and punishments. (*P.* 332, *Laws* 1859.) It is not in the language of the act.

II. " A pack of cards " is not a *device*, within the meaning of this section. Devices are mentioned and specified in the act, and we must look to that to determine what is meant by the word.

III. The general words used in the (230*th*) section are qualifiers of the preceding specified devices.

By the Court, BAILEY, J.   The grand jury for the county of Nemaha at the October term of the district court for that county in 1862, found a bill of indictment against Lewis Hardin, the appellee, in which they charge that said Hardin "with force and arms at Seneca, in said county of Nemaha, on the 10th day of April, A. D. 1862, did unlawfully suffer and permit a gaming device, to wit : a pack of cards, to be used for purposes of gambling and gaming in a house called the 'Union Saloon,' kept and owned by him in the town of Seneca, by divers persons and for divers sums of money to the jurors aforesaid as yet unknown," *contra formam,* &c.

At the April term of said court, 1863, said Hardin, by his counsel, moved the court to quash the indictment, which motion, after argument of counsel, was sustained by the court and the appellee discharged from custody.   From this order of the court, in quashing the indictment, the state appeals.

The indictment appears to have been found under section two hundred and thirty-two of the "act regulating crimes and punishments," (*Comp. Laws, p.* 333,) the language of which is as follows, viz. :

"Every person who shall permit any gaming table, bank or device, prohibited by the two hundred and thirtieth section of this act, to be set up or used for the purpose of gaming, in any house, building, &c., to him belonging, or by him occupied, shall, on conviction, be adjudged guilty of a misdemeanor," &c.

Section two hundred and thirty, referred to, reads as follows :

"Every person who shall set up or keep any table or gambling device, commonly called A B C faro bank, E O roulette, equality, or any kind of gambling table or gambling device, adapted, devised and designed for the purpose of playing any game of chance for money or property," &c.

The only question presented for the consideration of this court is, whether "a pack of cards " is a gambling device,

within the meaning of section two hundred and thirty, adapted, devised and designed for the purpose of playing games of chance, &c.

It is to be remarked, in the first place, that the several gambling devices, specifically enumerated in this section A B C faro, E O. roulette, &c., are all of them devices invented, devised and designed for the purpose of gambling, and *for no other purpose.*

They are the tools, implements and machinery of professional gamblers, and are, in the very language of the statute, adapted, devised and designed for the purpose named, while a "pack of cards," though, without doubt, frequently used for the purpose of gambling, is also, and probably much more frequently, used for the purpose of mere *amusement,* like drafts, chequers, chess, billiards, nine-pins and dominoes. It will hardly be claimed, we think, that an indictment, framed under this section, for permitting a gambling device, to wit : a "chequer-board," or a "chess-board," could have been sustained, because those implements, although manifestly in some sense "adapted" to the forbidden purpose, are not within the meaning of the law, either devised or designed for that purpose. Their more obvious and common use is for purposes of innocent amusement ; and though they may, perhaps, very frequently be used for purposes of gambling, they could not be called "gambling devices" within the meaning of this act, without doing violence to its obvious purport and intent. If in a similar act against the crime of counterfeiting the coin of the United States, it should be forbidden to keep or permit to be used any tools or implements adapted, devised and designed for counterfeiting, and an indictment under such act should charge the possession of dies or moulds for counterfeiting the gold eagles and half eagles, or the silver dollars, halves and quarters of the coin of the United States, it might be good, because such moulds or dies could be used *only* for such unlawful purpose ; but if the possession of crucibles,

melting pots, &c., were charged, it might not furnish any presumption of guilt, as these latter implements, though indispensable to counterfeiting, are more frequently employed for innocent and beneficial uses.

Gambling is sometimes carried on with the aid of very simple machinery; as, for instance, by means of two small sticks or twigs cut of different lengths and called "cuts," or "lots," and perhaps as frequently as by any other means with a coin or piece of money, the gamblers betting upon the chance of the coin being "odd" or "even," or upon its falling, upon being thrown into the air, with the head or the reverse side uppermost.

Yet it would be hard to presume that the keeping of sticks of different lengths, or of coin, in a house or shop would render the owner or occupant of such house or shop liable to indictment under this section of the act in question.

It must, we think, be obvious that it was the intention of the legislature in using the general words, after enumerating specifically certain of the most notorious and obnoxious of the implements used for the forbidden purpose, to include others of *similar* character, and, like them, designed *solely* for gambling purposes.

The two twigs and the coin, in the case supposed, are, in a certain sense, adapted to the gambler's purpose, else they would not be used for it; but they were neither "devised" nor "designed," and if the legislature intends to forbid all gambling and betting upon games of chance, it is plain that more certain, definite and comprehensive language should be made use of to evidence such intent.

The judgment of the court below is affirmed, with costs to the appellee.

All the justices concurred in this opinion.