No. 25,258.

THE STATE OF KANSAS, *Appellee*, v. M. BROWN, *Appellant*.

SYLLABUS BY THE COURT.

1. GAMING—*Setting up or Keeping Gaming Device or House—Construction Generally.* That portion of R. S. 21-915 making it an offense to set up or keep certain named gambling devices, or any kind of gambling table or gambling device, adapted, devised and designed for the purpose of gambling, or to induce any person to bet or play at or upon such gaming table or gambling device, or at any game played by means thereof, either on the side of or against the keeper, is directed primarily at the professional gambler and the tools and implements of his calling, or his use thereof.

2. SAME—*Keeping Gambling Device—Essential Elements of Offense.* It is an essential element of the offenses of setting up or keeping a gambling device, or of inducing persons to bet or play at a game thereon, that there be a keeper of such device, as that term is defined in R. S. 21-935.

3. SAME—*Information—Requisites and Sufficiency.* In a prosecution of one for permitting another to set up or use a gambling device on premises under his control, good pleading requires that the name of the person permitted to set up or use the prohibited device be set out in the information.

4. INDICTMENT AND INFORMATION—*Separate Felonies in Same Count.* Separate and distinct felonies, though of related character, should not be charged in the same count in the information, and when so charged and timely objection is made by motion to quash, the motion should be sustained.

Appeal from Greenwood district court; GEORGE J. BENSON, judge. Opinion filed June 6, 1925. Reversed.

*Robert H. Clogston, T. C. Forbes,* both of Eureka, and *F. S. Jackson,* of Topeka, for the appellant.

*Charles B. Griffith,* attorney-general, *C. A. Burnett,* assistant attorney-general, and *J. F. Darby,* county attorney, for the appellee; *Joseph A. Fuller,* of Eureka, of counsel.

The opinion of the court was delivered by

HARVEY, J.: This is an appeal from a verdict of guilty and judgment thereon in a prosecution under the gambling statute. The information, omitting caption and formal parts, is as follows:

"That on the 28th day of April, A. D. 1923, in said county of Greenwood and state of Kansas, one M. Brown did then and there unlawfully and feloniously and knowingly permit and allow to be set up and maintained gambling devicei and devices, composed of tables used for gaming and playing cards, the same being then and there adapted, devised and designed for the purpose of playing a game and games of chance, commonly known as 'poker' and other games of chance for money and other property, in the house and

building known as the Brown or Clifton hotel, owned and occupied by the said M. Brown, the same being located on the north 40 feet of lots 1 and 12, block 2, and commencing at the northwest corner of lot 12, running east 314 feet, thence north 30 feet, thence west 314 feet, thence south 30 feet, to place of beginning, in the town of Virgil, Kansas, according to the original recorded plat of said town of Virgil; that the said defendant then and there being, did then and there permit and allow various persons to congregate in said house and building so owned and occupied by the said defendant, and then and there being, did then and there permit and allow various persons to engage in and play a game and games of chance, commonly known as 'poker' and other games of chance; that said games so permitted and allowed were played for lawful money of the United States of America and other property, and were played by means of the aforesaid gambling device and devices, which the said defendant so allowed and permitted to be set up and maintained in said house and building above described."

A motion to quash for the reason that the information did not state facts sufficient to constitute a public offense, and that it charged more than one offense in one count, was filed, considered and overruled. The jury returned a verdict finding "the defendant guilty of . . . permitting to be set up and used for gambling purposes certain gambling devices in the place and at the time and in the manner and form as charged in the information."

Appellant contends that the information was fatally defective and that the motion to quash should have been sustained. This requires an examination of our statute pertaining to gambling devices. The sections directly involved were originally enacted in 1855 (Laws 1855, ch. 53, §§ 15-26), and were taken bodily from the Missouri statute, where they were originally enacted in 1825, and, with some amendments, continue to be the law of that state. They were embodied in our General Statutes of 1868, in chapter 31, relating to crimes and punishments (§§ 239-250), with a few amendments, not here material. Together, the sections provided the legislative scheme for the classification and punishment of gambling with gambling devices. Section 239 was directed at the professional gambler who set up a gambling table or device and induced or permitted persons to play or gamble thereon, either on the side of or against the keeper or operator of such device. Section 240 was directed at the person who played or bet upon such device. Section 241 was directed at a person who would permit another to set up and use such a device on the premises owned by him or under his control. Section 242 was directed at a person who kept a common gaming house. Section 243 was directed at a person who should

knowingly lease to another for the purpose of setting up or keeping such gaming devices. Section 244 defined who was a keeper of such gaming tables or devices. Section 245 declared leases to be void when the tenant was convicted of setting up and using gambling devices. Section 246 pertained to the testimony of persons concerning gambling devices. Sections 247 to 250 pertained to the powers and duties of the justice of the peace and other officials concerning gambling devices. It will be noted that these sections all relate in some way to the gambling devices prohibited by section 239.

Section 239 was amended in 1887 and again in 1895, and as so amended reads as follows:

"Every person who shall set up or keep any table or gambling device commonly called ABC, faro bank, EO, roulette, equality, *keno, wheel of fortune,* or any kind of gambling table or gambling device, adapted, devised and designed for the purpose of playing any game of chance for money or property, [and] *or* shall induce, entice or permit any person to bet or play at or upon any such gaming table or gambling device, or at or upon any game played at or by means of such table or gambling device, [or] *either* on the side *of* or against the keeper thereof, *or shall keep a place or room to be used as a place for playing any game of cards for money or property, or keep a common gaming house, or keep a house, room or place to which persons are accustomed to resort for the purpose of gambling,* shall on conviction be adjudged guilty of a [misdemeanor] *felony,* and punished by imprisonment [in a county jail not exceeding one year, and by fine not exceeding one thousand dollars] *and hard labor for a term not less than one year nor more than five years."* (R. S. 21-915.)

As above printed, the words in brackets were in the original section, but were taken out by the amendments, and the words in italics were not in the original section, but were added by the amendments. It will be noted that the principal changes wrought by the amendments are: (1) The names of two specific devices were added. (2) The setting up of the gambling device was made an offense, distinct from inducing, enticing or permitting a person to bet thereon. Previous to such amendment both elements entered into the offense. (3) There are added to the offense named in the original section the additional offenses (*a*) of keeping a place or room to be used as a place for playing any game of cards for money or property; (*b*) the keeping of a common gambling house (which was an offense under section 242); (*c*) keeping a house, room or place to which persons are accustomed to resort for the purpose of gambling; and (4) each of the offenses was made a felony instead of a misdemeanor.

Section 241 of the crimes act of 1868, as amended in 1895, is the same as section 17, chapter 53 of the Laws of 1855, except that the offense is made a felony instead of a misdemeanor, and reads as follows:

"Every person who shall permit any gambling table, bank or device prohibited by the first section of this act, to be set up or used for the purpose of gaming, in any house, building, shed, booth, shelter, lot, or other premises to him belonging, or by him occupied, or of which he has at the time possession or control, shall on conviction be adjudged guilty of a felony, and punished by imprisonment at hard labor for a term of not less than one year nor more than five years." (R. S. 21-916.)

The statute contemplates a keeper, and section 244, defining a keeper, has never been modified. It reads:

"Every person appearing or acting as master or mistress, or having the care, use or management for the time, of any prohibited gaming table, bank or device, shall be deemed the keeper thereof." (R. S. 21-935.)

The Missouri statute has been construed in the following cases: *Lowry v. The State,* 1 Mo. 722; *The State v. Purdom,* 3 Mo. 114; *State v. Ellis,* 4 Mo. 474; *Eubanks v. The State,* 5 Mo. 450; *The State v. Mitchell,* 6 Mo. 147; *State v. Bates,* 10 Mo. 166; *State v. Ames,* 10 Mo. 743; *State v. Fletcher,* 18 Mo. 425; *State v. Herryford,* 19 Mo. 377; *State v. Fulton,* 19 Mo. 680; *State v. Scaggs,* 33 Mo. 92; *The State v. Dyson,* 39 Mo. App. 297; *The State v. Mosby,* 53 Mo. App. 571; *The State v. Mohr,* 55 Mo. App. 325; *State v. Etchman,* 184 Mo. 193; *State v. Rosenblatt,* 185 Mo. 114; *State v. Hall,* 228 Mo. 456; *State v. Chauvin,* 231 Mo. 31; *State v. Cannon,* 232 Mo. 205; *State v. Potts,* 239 Mo. 403; *State v. Solon,* 247 Mo. 672; *State v. Patton,* 255 Mo. 245; *State v. Wade,* 267 Mo. 249.

Without attempting a detailed analysis of these cases, though we have examined each of them, their holdings, so far as they pertain to the questions here presented, may be thus stated: The statute, especially the section corresponding with our section 239 of the crimes act of 1868, is directed primarily at what may be termed the professional gambler, who set up, had charge of and induced others to play upon, either with or against him, some specially prepared gambling table or device. Some of these were of intricate design, others appeared to be simply constructed, but always so constructed as to operate to the advantage of the operator or keeper. Some of these devices were so well known that they were denounced in the statute by name. As to those it was not necessary to allege, in the indictment or information, that they were "adapted, devised

and designed for the purpose" of gambling. But as to tables or devices, not specifically .named in the statute, the indictment or information should in some way name or describe them, or their method of operation or use, with reasonable accuracy and in such a way that the name or description discloses it to be a "gambling table or gambling device adapted, devised and designed for the purpose" of gambling, and it is essential to show that there was a "setter-up" or keeper of the game, as that term is defined by the statute. Where the device charged as having been set up and used was a table and playing cards, the elements of the offense necessary to be alleged and proved were held, in *State v. Solon,* supra, to be:

"(a) That a table or other such appliance was set up, kept, or furnished; (b) that cards, commonly called playing cards, were kept or furnished and used in playing games of chance; (c) that money or property was bet on card games played on and with the above appliances, either by players against each other or by players against the keeper or setter-up, or by players on the side of the keeper or setter-up; (d) persons must have been shown to have been enticed, induced, or permitted to play such games on or with the devices aforesaid; and (e) defendant must be shown to have had at the time under inquiry the care or management, or to have been acting as master in charge of such paraphernalia."

We will now examine the Kansas cases. In *The State v. Hardin,* 1 Kan. 474, it was held that "the general words 'gambling devices' in section 230 [239] of the act regulating crimes and punishments, used after the several gambling devices specially enumerated therein, includes only other implements of similar character, designed solely for gambling purposes. A pack of. cards held not to be included." At page 477:

"It is to be remarked, in the first place, that the several gambling devices, specifically enumerated in this section ABC, faro, EO, roulette, etc., are all of them devices invented, devised and designed for the purpose of gambling, *and for no other purpose.* They are the tools, implements and machinery of professional gamblers, and are, in the very language of the statute, adapted, devised and designed for the purpose named, while a 'pack of cards,' though, without doubt, frequently used for the purpose of gambling, is also, and probably much more frequently, used for the purpose of mere *amusement,* like drafts, chequers, chess, billiards, ninepins and dominoes. It will hardly be claimed, we think, that an indictment, framed under this section, for permitting a gambling .device, to wit, a 'chequer-board,' or a 'chess-board,' could have been sustained, because those implements, although manifestly in some sense 'adapted' to the forbidden purpose, are not, within the meaning of the law, either devised or designed for that purpose. Their more obvious and common use is for purposes of innocent amusement; and though they may, perhaps, very frequently be used for purposes of gambling, they could not be called 'gambling

devices' within the meaning of this act, without doing violence to its obvious purport and intent. If in a similar act against the crime of counterfeiting the coin of the United States, it should be forbidden to keep or permit to be used any tools or implements adapted, devised and designed for counterfeiting, and an indictment under such act should charge the possession of dies or moulds for counterfeiting the gold eagles and half eagles, or the silver dollars, halves and quarters of the coin of the United States, it might be good, because such moulds or dies could be used *only* for such unlawful purpose; but if the possession of crucibles, melting pots, etc., were charged, it might not furnish any presumption of guilt, as these latter implements, though indispensable to counterfeiting, are more frequently employed for innocent and beneficial uses. Gambling is sometimes carried on with the aid of very simple machinery; as, for instance, by means of two small sticks or twigs cut of different lengths and called 'cuts,' or 'lots,' and perhaps as frequently as by any other means with a coin or piece of money, the gamblers betting upon the chance of the coin being 'odd' or 'even,' or upon its falling, upon being thrown into the air, with the head or the reverse side uppermost. Yet it would be hard to presume that the keeping of sticks of different lengths, or of coin, in a house or shop would render the owner or occupant of such house or shop liable to indictment under this section of the act in question. It must, we think, be obvious that it was the intention of the legislature in using the general words, after enumerating specifically certain of the most notorious and obnoxious of the implements used for the forbidden purpose, to include others of *similar* character, and, like them, designed *solely* for gambling purposes. The two twigs and the coin, in the case supposed, are, in a certain sense, adapted to the gambler's purpose, else they would not be used for it; but they were neither 'devised' nor 'designed,' and if the legislature intends to forbid all gambling and betting upon games of chance, it is plain that more certain, definite and comprehensive language should be made use of to evidence such intent."

In *Rice v. The State*, 3 Kan. 141, the prosecution was under section 239. Defendant was charged that he did set up and keep a certain gambling table, commonly called a faro bank, for gain, and that he induced divers persons to bet and play at and by means of said gaming table, commonly called a faro bank. An instruction setting forth the elements of the offense as follows, was approved:

"First: That at the place mentioned by the witness a gambling device or instrument was in existence. Second: That that gambling device was what is generally known as a faro bank. Third: That the defendant was the keeper of that faro bank. To establish the fact of one being the keeper of a faro bank, it is sufficient to show that he appeared thus acting as the one having control, in charge, superintending the same. It is not necessary to show that he was actually the owner. Fourth: That the defendant being the keeper, kept such gambling device for the purpose of gain. Fifth: That defendant, being the keeper and keeping the said device for purposes of gain, induced or permitted other persons to bet and play upon such gambling device either on his side or against him." (p. 158.)

On page 169 it was said the legislature took cognizance of the

The State v. Brown.

fact that the instruments named in the statute are gambling devices, and denounced them by name:

"If other devices than those named are set up, they must be charged to be 'adapted, devised,' etc.; *i. e.*, they must be described so as to show them to be 'gambling tables or devices.'"

An objection was raised that the indictment did not give the names of the persons who played, though one of them at least was known to the grand jury. But this objection was held to be without merit. (p. 171.)

*The State v. Stillwell*, 16 Kan. 24: The prosecution was under section 240 of the crimes act, and charged that defendant "is guilty of the crime of gambling, for that the said defendant, in said Greenwood county, did, on the first day of July, 1874, . . . play cards for money, checks and other valuable things." It was said in the opinion:

"The indictment is evidently defective. The offense intended to be charged was *betting* on a *gambling device*, or on a game played by means of such *gambling device*. But there is no allegation in the indictment that the cards used were a gambling device. . . . They are indeed seldom used as such, but generally they are used merely as a source of amusement. If the cards in this particular case were a gambling device, the indictment should have so alleged. [Citing 1 Kan. 474, 3 Kan. 142.] We do not, however, wish to be understood as approving the case of *The State v. Hardin*, 1 Kan. 474, to the extent that it goes. Cards may or may not be a gambling device, just as they are used and intended to be used."

The indictment was held fatally defective.

*The State v. Williamson*, 58 Kan. 699, 50 Pac. 890: The prosecution was under the last part of section 239, which provides, as amended in 1895: "Every person who shall . . . keep a house, room, or place to which persons are accustomed to resort for the purpose of gambling," etc. The question in the main was the sufficiency of the evidence.

*The State v. Oswald*, 59 Kan. 508, 53 Pac. 525: The prosecution was under section 239. Defendants were charged, in substance, that they set up and kept a gambling device composed of dice and the throwing thereof, adapted, devised and designed for the purpose of playing games of chance, commonly called craps, for money and property, and that they induced and permitted persons to bet money and play with and upon this gambling device the game of craps, against the defendants, and that through this gambling device money and property were lost and won by chance. There was

39—118 KAN.

a second count of keeping a common gambling house. It is objected that the first count did not charge the particular place where the gambling device was set up and kept. This was held to be without merit. It was also urged that two separate offenses were charged and that the counts were bad for duplicity. As to this it was said:

"The setting up and keeping of a gambling device and enticing and permitting persons to gamble therewith, when charged to have been perpetrated by the same persons at the same time, constitute a single offense, for which but one penalty can be inflicted." (Syl. ¶ 3.)

It was argued that one who had or sold dice would not be guilty of setting up or keeping a gambling device, within the meaning of the statute.

"While dice may be used for purposes other than gambling, they are adapted, and have always been largely used, for gaming or for determining by chance. The mere ownership and possession of a device practically adapted to gaming does not constitute an offense under the statute, but the setting up or keeping of such a gambling device is the element of criminality. . . . We think the correct view of the offense charged in the first count was taken by the trial court. It instructed the jury that it was essential to show 'that the defendants set up or kept a gambling device composed of dice and the throwing thereof, and that such gambling device was adapted, devised and designed for the purpose of playing a game of chance for money or property, and that it was so used.'" (p. 510.)

It may be noted that this construction ignores the amendment of the statute changing "and" to "or," which makes the setting up or keeping of a prohibited device an offense whether the keeper induces some one to play on it or not.

"It is true, as contended, that dice and the throwing thereof in gaming is not specifically mentioned in the statute as a gambling device; but it is manifest from the language employed that the legislature intended to prohibit the use of all gambling devices and gaming by which money or property is lost or won. It appears that the defendants furnished the dice, chips and other facilities for gaming, and witnesses state that the defendants 'banked the game.' There is testimony that they sold chips, and that when the players lost they lost to the defendants, and that when they won they won from the defendants. The witnesses stated that they played against the defendants; and the testimony shows that considerable money was won and lost on the games of 'craps' which were set up and managed by the defendants. We think there is abundant testimony to sustain the convictions." (p. 511.)

In *State v. Harmon*, 70 Kan. 476, 78 Pac. 805, defendant was charged with keeping a gaming house. The decision turns on the admission of testimony of an absent witness and of what was found at the raid.

*The State v. Way,* 76 Kan. 928, 93 Pac. 159: Defendant was prosecuted for setting up and keeping a gambling device under section 239, and was convicted of the inferior offense of betting upon a game of chance at a gambling resort. The question on appeal was whether or not he could be convicted of the inferior offense.

*The State v. Carrithers,* 79 Kan. 401, 99 Pac. 614: Defendant was tried on an information charging him with keeping a gambling resort and various allied offenses specified in section 239, including ordinary gambling as defined by other sections. Five forms of verdict were given to the jury. The verdict returned found him guilty of the misdemeanor only, and the court corrected the form of the verdict so that it purported to find him guilty of the felony. The appeal deals with that question and reverses the case.

*The State v. Justus,* 86 Kan. 848, 122 Pac. 877: The complaint charged defendant with maintaining a gambling house, with setting up and maintaining gambling devices, with gaming in a common gambling house, and with gambling. While they are separate counts, the second count charged a felony under section 239 and a misdemeanor under another section. It was said (p. 851) that the distinct offenses should, of course, be charged in separate counts, and had timely objection been made, no doubt it would have been sustained, but that might be waived.

"The proof that there was gambling in the house with cards and dice was abundant and there is sufficient to show that Black as well as Justus was engaged in operating it." (p. 852.)

In *State v. Turner,* 87 Kan. 449, 124 Pac. 424:

"The gravamen of the crimes defined . . . [in section 239] is the setting up and keeping of any gambling device or inducing or permitting any person to play thereat or the keeping of a place or room for such purpose or to which others are accustomed to resort for such purpose."

"The gravamen of the crime defined . . . [by the next section] is the permitting of another to set up or use any gambling device in a building or on premises in one's ownership or control. A table with poker chips and cards used for the purpose of gambling is a gambling device."

It was contended that two felonies were charged in the count.

"It will be observed from a reading of section 2726 that it refers to section 2725 in such a way that it is impossible to define an offense under the former section without embodying a portion of the latter. The fact remains, however, that the appellant was tried and convicted of only one crime." (p. 451.)

It is contended that before a person could be convicted the device must be of like character to those called ABC, etc.

"We do not think it is essential that the gambling device should be of like character to those specified, and disapprove what was said on this subject in *The State v. Hardin,* 1 Kan. 443, and approve what was said on the same subject in *The State v. Stillwell,* 16 Kan. 24. The language used in the statute would seem to exclude the construction contended for. 'Any kind of a gambling table or device' is included. The purpose is to prohibit any person from permitting any gambling table or device of any character to be set up and used for the purpose of gambling in any house, building or premises belonging to, occupied or controlled by him. A table with poker chips and cards used for the purpose of gambling is such a device. It is not the permitting of card playing that is condemned by the act, but it is the permitting of gambling by any device in a building or premises under one's control that is made punishable." (p. 452.)

*The State v. Hicks,* 101 Kan. 782, 168 Pac. 861: Defendant was charged with keeping and maintaining on a named premises a gambling place where persons were permitted to bet money on games of chance and to resort for gambling purposes, under the latter provision of section 239. The evidence was held insufficient to show appellant to be the keeper of or in charge of the place.

In determining what is a prohibited device within the meaning of the statute, both in Kansas and Missouri, it has been affirmed (*The State v. Hardin,* supra; *The State v. Wade,* supra), and denied (*The State v. Turner,* supra; *The State v. Rosenblatt,* supra), that the legal maxim *ejusdem generis* (of the same kind or species) should be applied. It has no place in the interpretation of the statute, though if the statute is correctly construed substantially the same result is reached as though it were used. We regard the correct construction to be: (*a*) If the device charged as having been set up or used is one of those named in the statute as ABC, faro, etc., it is, by reason of having been specifically named in the statute, a prohibited device. All the authorities agree on this. (*b*) If the device charged as having been set up or used is not one of those named in the statute, then the statute should be read as though those names were not in the statute, thus: "Every person who shall set up or keep . . . any kind of a gambling table or gambling device, adapted, devised and designed for the purpose," etc. Now, this cannot mean that a prohibited device is anything on, by or with which a bet might be made—the coin or matches in one's pocket, the ordinary office, library or dining table, the ordinary deck of playing cards, the ordinary board and pieces for playing chess or checkers—or an outfit for playing croquet, tennis, football, baseball, or any of a myriad of things, games and activities.

upon which a wager might be made. Had that been the intention the legislature could have said so, though when we consider the consequences of such a legislative enactment we are forced to the view that no sane legislature would ever make it. Especially is this true when the statute makes simply the setting up or keeping of a prohibited device a felony. What the legislature did was to describe the prohibited table or device as a "gambling table or gambling device." Now, it has been held that whether a table is a gambling table is determined by the use to which it is put rather than by its character or design. (27 C. J. 990, and cases there cited.) So, with the evident purpose of avoiding the possibility of that construction, the legislature required, not only that it be a gambling table or gambling device, but that it be "adapted . . . for the purpose" of gambling, *i. e.*, susceptible to such use, or change so as to be used, or more advantageously used, for that purpose; "and devised . . . for the purpose" of gambling, *i. e.*, invented or put together with that purpose in mind; "and designed for the purpose" of gambling, *i. e.*, that idea must be in the mind of the setter-up or keeper. Not just one of these things, but each of them must be alleged and proved. That is what the court had in mind when it said (*The State v. Hardin,* supra) the table or device must be something that could not be used for any other purpose; though, as properly said in *The State v. Stillwell,* supra, that is going too far—some genius might devise the worst kind of a gambling device which could be used for some other purpose. When we consider that the statute was aimed at the professional gambler, and the tools or devices of his trade, and consider the care the legislature took to define such devices, and further consider that by the amended statute the very setting up or keeping of them is a felony, it is clear that something more than the ordinary table and ordinary playing cards is intended, notwithstanding the apparent holding to the contrary in *The State v. Turner,* supra.

For example, the ordinary playing cards may be marked by the one who has them, so he can tell what cards his opponent has, with the intention of using them for the purpose of gambling, and thereby become a gambling device, the possession of which is prohibited; or an ordinary table might be so changed as to become an advantage, tool or implement of a professional gambler, such adaptation, devising and keeping being with the design or purpose of using it for the purpose of gambling, and thus make it a prohibited device;

but the ordinary table and playing cards do not constitute a gambling device, the setting up or keeping of which is an offense under this statute. Hence the interpretation of the statute does not depend upon the application of the legal maxim *ejusdem generis*, but the prohibited tables or devices, other than those named, must be of the class defined by the statute as a "gambling table or gambling device, adapted, devised and designed for the purpose" of gambling.

It will be noted also that the statute contemplates that the prohibited device be in charge of a keeper, and defines the word keeper, and by the decisions it is clear this is an essential element of the offense.

Now let us examine the information. It is drawn under R. S. 21-916. It does not charge defendant with setting up or using a prohibited gambling device, but charges that he did "permit and allow to be set up and maintained gambling device and devices, composed of tables used for gaming, and playing cards, the same being then and there adapted, devised and designed for the purpose" of gambling. It will be noted that the person whom defendant is charged with permitting "to set up" and maintain the device is not named. Good pleading would seem to require this, and certainly so if this is the person intended to be shown to be the keeper. While defective in this respect, we do not regard the defect as fatal. It will be noted that there is no description of the device, other than "tables used for gaming and playing cards, . . . adapted, devised and designed for the purpose" of gambling. When a statute, defining a crime, sets out the elements constituting the offense, a description in the language of the statute is sufficient. Though the exact language of the statute was not followed, it is inferentially so, and under the rule just stated, and *Rice v. The State*, 3 Kan. 141, 169, we hold it sufficient, though a similar information was held fatally defective in *The State v. Wade*, supra, for stating mere conclusions of law instead of facts which constitute the offense, as required by the Missouri statute; but see our R. S. 62-1004. The description in the information of the location of the place where the gambling device is alleged to have been set up is not necessary (*The State v. Oswald*, supra), though including it could not prejudice the defendant. The information then charges defendant with keeping a place where persons were permitted to congregate, or resort, for the purpose of gambling. This is a separate felony under, the latter

part of R. S. 21-915.   While separate offenses of the same general-
character may be charged in the same information, they should be
charged in separate counts, and must be so charged, if defendant
makes timely objection by motion to quash.   (*The State v. Goodwin,*
33 Kan. 538, 6 Pac. 899; *The State v. Hodges,* 45 Kan. 389, 26 Pac.
676; *The State v. Justus,* 86 Kan. 848, 851, 122 Pac. 877; *The State v.
Green,* 104 Kan. 16, 177 Pac. 519.)

The difficulties which may result from charging two or more
separate and distinct felonies—even though they be related crimes—
in the same count in the information is illustrated in this case.   The
evidence tended to show that defendant permitted persons to resort
to a certain room in the basement of his hotel for the purpose of
gambling (whether sufficient for that purpose we do not decide),
but the jury did not find him guilty of that offense; the jury found
him guilty of "permitting to be set up and used for gambling pur-
poses certain gambling devices.   .   .   .   as charged," without any
evidence that there was any specially adapted, devised or designed
gambling table or gambling device, as those words are used in the
statute, set up or kept by any keeper, as that term is defined in the
statute.   The motion to quash the information should have been
sustained.

In 27 C. J. 990 it is said:

"The offenses created by statutes dividing prohibited games into two
classes, namely, playing cards at particular places and keeping or exhibiting
a gaming table, are similar only in that the games referred to come under
the general definition of a game; in the first class the game prohibited is
merely one of skill or chance, one or both, between two or more persons,
generally each for himself or with partners, according to some rule by which
each one may succeed or fail in the trial, while in the second class the char-
acteristic principle or element is that there must .be a keeper, dealer or ex-
hibitor, and operation on the basis of one against the many."

It will not be necessary to discuss other questions argued.   We
now have statutes defining as offenses gambling in its various forms,
with or without the use of specially prepared gambling devices.
Some of these offenses are felonies, some are misdemeanors.   An
information should state the facts constituting the offense in plain
and concise language.   If the prosecutor is uncertain what the facts
will disclose, he should plead, in separate counts of the information,
the facts, as fully as he is advised of them, constituting offenses
under two or more sections or provisions of the statute.   It is only

in this way that certainty of result can be determined by the verdict.

The cause will be reversed, with directions to sustain the motion to quash the information.

MARSHALL and HOPKINS, JJ., dissenting.