No. 44,516

STATE OF KANSAS, *Appellee,* v. BILLIE R. DAVIS, *Appellant*

(426 P. 2d 143)

Opinion filed April 8, 1967.

*Walter F. McGinnis,* of El Dorado, argued the cause and *Allyn M. Mc-Ginnis,* of El Dorado, was with him on the brief for appellant.

*Darrell G. Mitchel,* County Attorney, argued the cause and *Robert C. Londerholm,* Attorney General, and *Raymond A. Overpeck,* Deputy County Attorney, were with him on the brief for appellee.

The opinion of the court was delivered by

FROMME, J.: The defendant, Billie R. Davis, was steward and secretary of the El Dorado Aerie of the Eagles Lodge. He was tried and convicted on three felony counts under K. S. A. 21-915, He was sentenced to the penitentiary on each count for a period of one to five years. The sentences were to run concurrently.

In count one of the information it was charged defendant feloniously set up and kept certain gambling devices, to-wit: slot machines. In count two it was charged defendant feloniously did permit a person to bet and play upon these gambling devices, either on the side of or against the keeper of the slot machines. In the third count it was charged that defendant feloniously did keep a room and place (Eagles Lodge) to which persons were accustomed to resort for the purpose of gambling.

The defendant relies upon ten specifications of error to secure a reversal, including insufficiency of the evidence to sustain the verdict. It is therefore necessary to set forth the facts in some detail. The Fraternal Order of Eagles is an organization governed by a written constitution and by-laws and having local "Aeries" or lodges in various cities of this state. The El Dorado Eagles Lodge had been in existence for over sixteen years and maintained club rooms on the second floor of a building located at 115½ West First Street in the city of El Dorado. The club was managed or governed by a board of trustees who had control of the lodge.

The Eagles' lodge rooms at El Dorado covered a portion of the second story of the building and consisted of a dance area, a bar area, a game room, an office and kitchen facilities. The game room was located west of the bar area.

The defendant moved to El Dorado in July 1964 and was employed by the trustees of the lodge as steward and secretary. He worked for the lodge for seven months until an injunction was obtained and the lodge was closed. During this time he was paid a set monthly salary, carried keys to the premises, kept the club open, waited on members, served them beer or "set ups" if they brought their own bottle, and spent most of his time behind the bar or cleaning the premises. An officer or trustee of the lodge was usually present. The club rooms were not open to the public. The officers could admit guests and club members were allowed free access at all times.

Pursuant to vote of the trustees slot machines were installed in the game room the latter part of July 1964 and in October agents of the Internal Revenue Bureau together with local police officers searched the premises and confiscated four slot machines. The following evening after an unrelated altercation at the lodge the defendant went to the police station and signed a statement concerning this altercation. The police officers then obtained permission from defendant to search the lodge rooms and they discovered more slot machines had been set up or installed on the premises. Defendant was advised by the officers not to move the machines. Seven months later state and local officers obtained a search warrant and gained admittance to the club rooms by pushing a buzzer at the bottom of the stairway at which time the lock clicked and the door was free. They went upstairs and rang another bell. The defendant asked what they wanted and when they advised him of the search warrant he opened the door. The officers went directly to the game room and observed four slot machines. There were two people in the room and one was just leaving. The defendant was arrested and the slot machines were confiscated.

A police officer testified how these four slot machines operate. A coin of proper denomination is inserted and the person then pulls the handle which is spring loaded. The symbols rotate and when rotation ceases, if a certain combination of symbols turns up, the machine ejects money into a pay chute. All four machines were tested at the courthouse after confiscation. All of them operated.

The quarter machine ejected three quarters and the nickel machine dispersed two nickels into the pay off chute when they were operated by the police officers.

Seven witnesses testified they had played these slot machines in the Eagles' lodge game room. Six witnesses were members of the club or wives of members. One witness was a paid investigator. She testified that when she arrived at the lodge on February 13, 1965, the defendant was leaving the club and he was not present while she observed the slot machines being played. The other witnesses testified that defendant was never in the game room of the lodge while they played the machines. He usually was tending bar in the next room. The lodge had other machines requiring change to operate which included a "juke box" and a cigarette machine. Some of the witnesses obtained change from the defendant behind the bar which was in the room adjacent to the game room. There was no testimony as to who set up these machines. The defendant testified he was not present in the lodge roms when they were installed and did not see them set up. The license for these machines was obtained in the name of the lodge and the machines were owned by it. Keys to the premises were in the hands of five or six members. The president of the Eagles' Auxiliary testified she conducted bingo games on the premises on Tuesdays. Cards cost a nickel and groceries were the prizes. She never talked to the defendant about slot machines or bingo games. The bingo equipment was owned by the ladies auxiliary. The defendant took no part in the bingo games.

At the close of the state's evidence the defendant presented and argued a motion to dismiss the action for insufficient evidence. The matter was again brought to the attention of the court on motion for new trial.

The statute under which prosecution was had, K. S. A. 21-915, is as follows:

"Every person who shall set up or keep any table or gambling device commonly called ABC, faro bank EO, roulette, equality, keno, wheel of fortune, or any kind of gambling table or gambling device, adapted, devised and designed for the purpose of playing any game of chance for money or property, or shall induce, entice or permit any person to bet or play at or upon any such gaming table or gambling device, or at or upon any game played at or by means of such table or gambling device, either on the side of or against the keeper thereof, or shall keep a place or room to be used as a place for playing any game of cards for money or property, or keep a common gaming house, or keep a house, room or place to which persons are accustomed to resort for

the purpose of gambling, shall on conviction be adjudged guilty of a felony, and punished by imprisonment and hard labor for a term not less than one year nor more than five years."

In *State v. Brown,* 118 Kan. 603, 236 Pac. 663, the court traced the history of the above statute and mentioned the changes made in the original act by the 1887 and the 1895 amendments. It noted that the prohibited acts were first made misdemeanors and later changed to felonies. The court indicated that the statute was directed at the professional gambler and the tools of his trade.

In 1903 the legislature passed a special act of similar import specifically naming the "slot machine" as a gambling device and making certain prohibited acts misdemeanors.

K. S. A. 21-1507 is as follows:

"The operation of any machine or mechanism for gambling purposes, and particularly those machines commonly known and designated as 'slot machines,' in the operation of which cash prizes or other valuable things are given, shall be deemed a misdemeanor."

K. S. A. 21-1508 is as follows:

"Every person who shall set up or keep in any room where merchandise is sold or kept for sale, hotel office, clubroom, saloon, joint, gambling house, brothel or other public or private place any slot machine or gambling device, devised and designed for the purpose of playing any game of chance for money or property, and shall induce, entice or permit any person to bet or wager any money or other things of value thereon, shall on conviction thereof be adjudged guilty of a misdemeanor under this act, and shall be punished by a fine of not less than one hundred dollars nor more than five hundred dollars, or by imprisonment in the county jail for a term of not less than thirty days nor more than one year."

In *State v. Greenwood,* 186 Kan. 687, 352 P. 2d 434, the court said:

"The gambling statutes of the state were exhaustively reviewed and considered in the opinion of the case of *State v. Brown,* 118 Kan. 603, 236 Pac. 663, which was a prosecution under the statute now appearing as G. S. 1949, 21-915. It was said in the Brown case:

" 'It is an essential element of the offenses of setting up or keeping a gambling device, or of inducing persons to bet or play at a game thereon, that there be a keeper of such device, as that term is defined in R. S. 21-935.' ( Syl. ¶ 2.)

"On the other hand, it seems clear that G. S. 1949, 21-1508, must be construed to apply only to those self-sufficient slot machines and other gambling devices as may be set up and played without an attendant, and with the machine taking in money from the player and 'paying off' automatically any winnings. (*State, ex rel v. Myers,* 152 Kan. 52, 102 P. 2d 1028)."

In *Greenwood* the court affirmed the conviction under the felony statute upon evidence which conclusively showed the gambling de-

vices involved were not self-sufficient slot machines. The defendant was held to be the "keeper of the machine" within the meaning of this statute. The defendant in *Greenwood* was present at all times the machines were being played. A player paid him for so many games -and defendant then pushed the button activating the machine and showing the games paid for by the player. When the games were played the machine did not pay off automatically. Additional games were registered on the machine and the keeper paid the player the amount required to redeem the number of games showing on the machine.

It is apparent the gambling devices in the present case were self-sufficient and required no one to maintain play upon them except the player himself. The evidence upon which conviction is based was insufficient to prove the machines were set up or kept by the defendant within the meaning of our case law, for at no time was defendant in the game room of the lodge when the machines were being operated. Several witnesses testified defendant was not even in the lodge quarters when the machines were played by them.

Counts one and two of the information must necessarily fail because of lack of evidence to establish that defendant either set up or was the keeper of these gambling devices as contemplated by the provisions of K. S. A. 21-915.

Count three charges that defendant feloniously kept a room and place to which persons were accustomed to resort for the purpose of gambling. K. S. A. 21-935 attempts to define who shall be deemed a keeper of a gambling device and who shall be deemed keeper of any building in which a gambling device is set up or kept. A keeper is defined as any person who shall appear or act as master, or having the care or management of the building in which the gambling device is set up or kept.

Whenever charges are brought under K. S. A. 21-915 the prosecution is required to prove all elements of the crime set forth in the statute. Was defendant the keeper having care or management of the offending building or club rooms?

The evidence indicated that the club rooms of the Fraternal Order of Eagles at El Dorado were rented by its board of trustees. Rent was paid by the treasurer. The trustees ran the lodge and voted to install the slot machines. The license for the slot machines was obtained by and in the name of the Eagles Lodge. The defendant was hired as steward of the lodge and was an employee receiving a

set monthly salary. He had a key to the building and generally opened and closed the premises, cleaned the club rooms and spent much of his time tending bar or talking with members of the lodge. He worked there seven months. The keys to the slot machines were kept in the lodge safe and were available to the club officers and to the defendant. The defendant on one occasion did attempt to work on one of the slot machines but he did not know how to maintain the machines and was not required to open them or keep them in operation. He was not authorized to open the machines or remove the winnings therefrom and had no interest in the profits. (See *State v. Hicks,* 101 Kan. 782, 168 Pac. 861.)

The evidence in this record is insufficient to prove the defendant was either the keeper of the gambling devices (slot machines) or of a room and place to which persons were accustomed to resort for the purpose of gambling within the meaning of the felony gambling statute. For this reason it is not necessary for us to examine the remaining specifications of error urged by the defendant.

The judgment of conviction is reversed as to all counts.

FATZER, J., concurring in part and dissenting in part: I concur in the reversal of the convictions of counts one and two of the information, when considered in the light of the evidence introduced to sustain them. However, I would rest the decision upon different grounds than set forth in the court's opinion.

No one questions the fact that a "slot machine" or a so-called "one-arm bandit" is a gambling device, adapted, devised and designed for the purpose of playing a game of chance for money or property. Except for the enactment of K. S. A. 21-1508 in 1903, the offenses charged in counts one and two of the information would have been violations of K. S. A. 21-915, enacted in 1895. But the offenses charged in those two counts are made one violation of the misdemeanor statute (21-1508), which is not chargeable as a felony under 21-915. As is noted, 21-1508 deals specifically with gambling devices described by 21-1507 as "slot machines." Where there is conflict between a statute dealing generally with a subject, such as 21-915 deals generally with any kind of gambling device, adapted, devised and designed for the purpose of playing a game of chance for money or property, and another statute dealing specifically with a certain phase of it, such as 21-1508 deals specifically with the setting up and keeping of slot machines in a clubroom and shall induce, entice or permit another to bet or wager money

thereon, the specific legislation controls. (*Wulf v. Fitzpatrick*, 124 Kan. 642, 261 Pac. 838; *Smith v. Henry*, 155 Kan. 283, 287, 124 P. 2d 448; *Sherman County Comm'rs v. Alden*, 158 Kan. 487, 148 P. 2d 509; *Moody v. Edmondson*, 176 Kan. 116, 269 P. 2d 462; *City of Garden City v. Miller*, 181 Kan. 360, 368, 311 P. 2d 306.) The statutes in question, 21-915 and 21-1508, should be construed harmoniously so that each has a field of operation, and it is obvious this can be done.

In my judgment, 21-1508 has "carved out," so to speak, from 21-915 the offense dealing with the setting up, keeping, inducing, enticing or permitting any person to bet or wager money or other things of value on a slot machine. In other words, the newer slot machine statute (21-1508) supersedes the older law (21-915) insofar as inconsistent provisions in those statutes are concerned. Hence, conduct which would constitute a violation of 21-1508 is not a felony as denounced by 21-915, and the punishment for the offense is that prescribed for a misdemeanor in 21-1508. This was the holding in *State v. Greenwood*, 186 Kan. 687, 352 P. 2d 434. See, also, *State ex rel., v. Myers*, 152 Kan. 52, 54, 102 P. 2d 1028. For this reason I concur in the reversal of the convictions of counts one and two in the information.

I would affirm the conviction for the offense charged in count three, that the defendant feloniously did keep a room and place to which persons were accustomed to resort for the purpose of gambling. K. S. A. 21-935 defines who is a keeper of a common gaming house to which persons are accustomed to resort for the purpose of gambling as defined and denounced in 21-915. Under 21-935 every person who shall appear or act as master or mistress, or have the care or management of any house or building *in which any gambling device is set up or kept,* is deemed the keeper. There was conflicting evidence whether the defendant could be said to be the keeper of the Eagles Lodge Hall, but the jury found him guilty of the offense charged, and in my judgment, the evidence was sufficient to sustain the jury's finding. I need not repeat the evidence here since it is summarized in the court's opinion, except to note the defendant was in charge of the hall, he had the care and management of the lodge room, he ejected a person therefrom who created a disturbance, and he used the key to the slot machines to try to make them operate. These and other acts of management compel me to conclude he was the keeper of the lodge room to which persons were accustomed to resort for the purpose of gam-

bling. The fact that the gambling was performed by slot machines does not lessen the validity of the change.

K. S. A. 21-918 provides that all places used for any of the unlawful purposes denounced in 21-915 are declared to be common nuisances and subject to being abated as therein provided. In *State, ex rel., v. Myers,* supra, it was held that 21-915 includes slot machines for purposes of enjoining a common nuisance as defined in 21-918, and no inconsistency existed between 21-1508 and 21-918. In my judgment, no inconsistency exists between 21-1508 and 21-915 with respect to the offense charged in count three of the information. As is observed, 21-915 defines at least six different offenses relating to gambling while 21-1508 defines only one offense which is carved out of 21-915, that is, the setting up and keeping, and inducing, enticing or permitting another to bet or wager money on a slot machine. (*State v. Brown,* 118 Kan. 603, 605, 236 Pac. 663.) It does not contain language making it unlawful to keep a room or house to which persons are accustomed to resort for the purpose of gambling as does 21-915. That is the clear purport of its language. Hence, it logically follows the offense defined in 21-915 and charged in count three of the information—keeping a common gaming house to which persons are accustomed to resort for the purpose of gambling (common nuisance)—was not excepted from 21-915 by 21-1508, and I would affirm the defendant's conviction on count three.