No. 21,474.

THE STATE OF KANSAS, *Appellee*, v. ROBERT HICKS, *Appellant*.

SYLLABUS BY THE COURT.

MAINTAINING GAMBLING RESORT—*Insufficient Evidence to Convict.* Evidence examined and held insufficient to sustain a conviction under section 295 of the crimes act (Gen. Stat. 1915, § 3622), charging defendant with keeping and maintaining a gambling resort.

Appeal from Montgomery district court; JOSEPH W. HOLDREN, judge. Opinion filed November 10, 1917. Reversed.

*Dallas W. Knapp,* and *Charles Bucher,* both of Coffeyville, for the appellant.

*S. M. Brewster,* attorney-general, *Thurman Hill,* county attorney, and *George D. Higgins,* assistant county attorney, for the appellee.

The opinion of the court was delivered by

PORTER, J.: The appellant was charged with keeping and maintaining, on certain premises in Coffeyville, a gambling place, where persons were permitted to bet money on a game of chance and to resort for gambling purposes. He was convicted and sentenced to a term in the penitentiary not exceeding five years. In his appeal he contends that the verdict and judgment are not sustained by the evidence.

Informations were filed charging Scotty Watson and Bob Hicks, the appellant, with maintaining and keeping a gambling resort. By agreement both defendants were tried together, with the result that both were convicted. The appellant filed a motion for a new trial, which the court overruled. The evidence of the prosecution showed that the premises in question, a room under the Condon bank, were used as a pool hall, and that a great many persons congregated there at times and played games of cards and dice for money. It is contended by the state that the abstract discloses an abundance of testimony to sustain the verdict and judgment. The principal witness for the prosecution was C. P. Carnes. He testified that Bob Hicks was "in and out of the pool hall

there in both departments." In answer to the question, "Who seemed to be in charge of the place?" he said: "There was several in there at the time. I don't know just who had charge of the place." The nearest the testimony of this witness came to connecting the appellant with any management or control of the premises was as follows:

"Q. Do you know what they called this place down beneath the basement; what name it went by? A. No, I don't know what the name of the pool hall was.

"Q. To refresh your recollection, was n't it generally called Bob and Scotty's place? A. I understood they run the place; that is all I know; it is hearsay."

The city attorney, who was agent for the bank, testified that he rented the basement to Scotty Watson on an oral lease; that Watson occupied the basement between one and two months, when the bank made complaint and he asked Watson to vacate. He testified that he never knew of Hicks having the reputation of being in the gambling business, and never learned anything that would lead him to believe that Hicks had anything to do with the pool hall; that he first heard it intimated when insinuated by the county attorney at the preliminary hearing.

W. R. Brooks, a witness for the state, testified as follows:

"Q. What was the name of that place? A. I don't know; it was a pool hall.

"Q. To refresh your recollection, was n't it called Bob or Scotty's place? A. Oh, I have heard it referred to—to go down to Scotty's or down to the pool hall.

"Q. Did you ever see Bob Hicks down there? A. Yes.

"Q. Did you see him there with his hat off? A. I don't know whether he had his hat off or not; never paid any attention.

"Q. What was he doing there? A. Walking around like the rest of us.

"Q. Who did you understand was running the place? A. Well, I said it was referred to as Scotty's pool hall.

"Q. Whoever had charge of things was running it that day? A. Yes, sir.

"Q. Who was it? A. Scotty. I don't remember seeing Hicks there. Had I seen Hicks there I believe I would have remembered it. Have heard the place referred to as 'Scotty's Place,' but never heard it called 'Bob and Scotty's Place.' Never heard Bob and Scotty's names connected until this case was brought. I started to shoot dice down there once and Scotty stopped the game. Scotty asked us if we wanted to get him arrested. I never saw Hicks gambling down there."

On his cross-examination this witness testified:

"Q. You said it was referred to as Scotty's place; was that the name it went by generally among the boys? A. I have heard it referred to in that way.

"Q. Did you ever hear it referred to as Bob and Scotty's place until this case? A. No, I can't say as I did.

"Q. You never heard those names connected until this case was brought, did you? A. No, sir."

Scotty Watson, charged jointly with the appellant, testified that the only gambling game he got any "rake-off" from was a game of pitch for cigars. He was asked on cross-examination:

"Q. How do you play that game? A. Play four-handed or single-handed. They played pitch for cigars.

"Q. Who took care of that game for you? A. I took care of it most of the time myself.

"Q. Who took care of it the rest of the time? A. Anybody. Sometimes two or three would come in and play among themselves.

"Q. Did Bob Hicks take care of it? A. No, sir, not that I recollect; he might sometimes.

"Q. What part of the pool hall did Bob Hicks take charge of? A. None.

"Q. You said he might have took charge of that pitch game for cigars? A. He could have played; he loafed around there, set around there a good deal; we have always been pretty good friends.

"Q. He was always there helping you was n't he? A. No he was n't there helping me."

The appellant was not charged with betting money or property upon a game of skill or chance at a gaming-house. Had this been the charge the evidence might have been sufficient to sustain a conviction; but the charge against him was that he kept and maintained a place where others were permitted to resort for gambling purposes. This offense is made a felony by section 295 of the crimes act (Gen. Stat. 1915, § 3622), and punished by imprisonment and hard labor for a term of not less than one year nor more than five years.

In the opinion of the court the evidence can not be held sufficient to warrant the conviction, and the judgment will be reversed and the cause remanded with directions to grant a new trial.