## SESSO v. UNITED STATES.
### No. 8176.

United States Court of Appeals for the District of Columbia.

Argued Oct. 5, 1942.

Decided Dec. 7, 1942.

Mr. James A. O'Shea, with whom Messrs. F. Joseph Donohue, Harold F. Hawken, and Alfred Goldstein, all of Washington, D. C., were on the brief, for appellant.

Mr. William Hitz, Asst. U. S. Atty., with whom Messrs. Edward M. Curran, U. S. Attorney, and Charles B. Murray, Assistant United States Attorney, all of Washington, D. C., were on the brief, for appellee.

Before GRONER, Chief Justice, and MILLER and VINSON, Associate Justices.

VINSON, Associate Justice.

A judgment of the District Court was entered upon verdict of a jury finding appellant, Michael Sesso, guilty of the crime of setting up and keeping a gaming place in the District of Columbia for the purpose of betting upon the results of horse races. This particular pursuit is embraced within the prohibitions of our gaming statute.[1] Appellant conceded in oral argument the inadequacy of several allegations of error relied upon in his brief, and urges a reversal solely upon the insufficiency of the Government's evidence to establish that a gaming place was set up and maintained within the meaning of the statute, or, if

[1] Act of Mar. 3, 1901, 31 Stat. 1331, c. 854, § 865, D.C.Code (1940 ed.) Tit. 22, § 1504. Beard v. United States, 65 App.D.C. 231, 82 F.2d 837, certiorari denied, 298 U.S. 655, 56 S.Ct. 675, 80 L.Ed. 1382; Nuckols v. United States, 69 App.D.C. 120, 99 F.2d 353.

382

so, that the appellant was connected therewith.

■ We are of the opinion that there was more than ample evidence that a gaming place was illegally set up and maintained. To establish its case, the Government relied upon uncontradicted evidence gathered by the Metropolitan Police, who had the premises under surveillance for a six months' period between January 18 and July 18, 1941. The premises were at 1110 Eighth Street, S. E., and were owned by Mary Sesso, mother of the appellant. The front room was operated as a barber shop, the occupancy permit to which was held by Anthony Sesso, brother of the appellant. Wilbur E. Norris, colored, was employed there as a boot-black. There was a rear room, which was separated from the barber shop by a thick door. A lock and five inside bolts secured this door, and a small peephole had been cut therein. In the rear of the back room was another heavy multi-bolted door, which led into a back yard. The yard was enclosed with a high board fence in which there were two gates of the same height as the fence. Beneath the back room was a basement with doors leading to the room above and to the back yard. Both of these doors were equipped with locks.

Several policemen visited the premises at least eight times during the period stated. Sometimes the door leading from the barber shop into the rear room was unbolted only after considerable delay during which the unmistakable scamper of retreating feet was heard running through the rear door. The police entered the back room and basement to find the air congested with heavy tobacco smoke. The officers observed horse race slips and racing forms scattered over the floors. In the basement they saw shelves stacked with scratch pads, pencils, racing forms, horse racing slips, and scratch sheets. The basement contained a counter, upon which was a money till, and a short wave radio with headphones. On one occasion, when the police had surrounded the place, they saw Wilbur Norris signal their arrival and then observed sixteen men scrambling over the back fence and through the back yard gates. On another occasion the officers

surprised six of the apparent patrons in the rear room while they were deeply engrossed in the study of scratch sheets and racing forms.

On July 18, 1941, after procuring a search warrant, several officers forced their way into the rear room after subduing resistance offered by Anthony Sesso and Wilbur Norris. In the basement they found sixteen men, and a locker containing $50 in bills and a number of small paper slips with written matter on them. On some were written names with numbers annexed, and on others only numbers. One of the slips had on it the name of "Tony Weaver" with numbers beside it; an "Armstrong Scratch Sheet" found at the time in the room and bearing the date of the raid, listed "Tony Weaver" as the first selection in the third race at Empire City.

■ Appellant asks us to consider that this evidence was insufficient in that there was no marked money employed by the police, no bet proved, and no money shown to have been passed upon the premises. Our earlier decisions have determined, however, that the gravamen of this felony is furnishing the facilities for gaming activities;[2] it is immaterial that betting actually took place or that money actually passed.[3] Of necessity, the Government was required to rely largely upon circumstantial evidence.[4] The evidence necessary to show a gaming place need not be direct. The intent with which the act was done may be gathered from all the circumstances shown in evidence. The secretive, shady manner in which the activities of the inner rooms were guarded and obscured from outside observance, the condition of the rooms at the times of the visits and arrest, the presence of the radio, headphones, scratch sheets, and other equipment generally associated with an enterprise of this character were all circumstances which pointed directly to the conclusion that the room was occupied for the purposes charged.[5]

■■ We are equally certain that there was sufficient evidence from which a jury might conclude beyond a reasonable doubt that the appellant was at least in the immediate control of the premises during the occasions when the gaming was in progress.

2 Nelson v. United States, 28 App.D. C. 32.

3 Donald v. United States, 70 App.D. C. 14, 102 F.2d 618; Beard v. United States, 65 App.D.C. 231, 82 F.2d 837,

certiorari denied, 298 U.S. 655, 56 S.Ct. 675, 80 L.Ed. 1382.

4 Beard v. United States, supra, n. 3.

5 Beard v. United States, supra, n. 3; People v. Tuttle, 27 Cal.App.2d 647, 81 P.2d 571.

It is not necessary that the appellant should have been in permanent possession of the premises, or that he be a lessee or even a keeper. It is only incumbent upon the Government to show that he was in charge, possession, or control of the place when the offense occurred.[6]

During the period of surveillance and at the time of the raid, appellant was always found present. Often he was found in the rear room, from which he would unbolt the intervening door after some delay during which his "visitors" were heard hustling through the back door. In these instances, appellant was found alone in the rear of the premises. On some occasions the appellant protested vigorously at the intrusion of the police; at other times he volunteered or agreed to conduct them through the premises, at one time allowing them to surprise the six patrons, as previously stated. The appellant was recognized as one of the sixteen men who scrambled over the back fence upon the occasion when the rear room occupants had been "tipped off" to the police call. When the police entered the basement during the final visit and arrest, they observed appellant just coming from the money locker at the end of the room. A search of his person revealed that he was carrying $945.50 in bills and coin of varying denominations.

The constant presence of appellant at the premises, the dominion and authority he asserted therein, his position and conduct during the several visits and the eventual raid, amounted to ample evidence to support the inference that appellant was in control and possession of the premises upon those occasions. In the case of Beard v. United States,[7] we held that in these circumstances and without any testimony on appellant's behalf to explain his presence in the room, the jury had a perfect right to conclude that he was in control or charge of the concession. "This is a case like that of men found at midnight at a blockade still in full operation, located in the depths of a swamp. Their presence at the place of the crime may be accidental and innocent, *but the inference is that it is not, and calls for explanation;* and, if they offer none and the jury convict, an appellate court would not be justified in saying that the inference is not sufficient to sustain the conviction. * * * *"[8] [Italics supplied]

Prima facie evidence of the *corpus delicti* being made out, the way was paved for the introduction of several damaging admissions made by the appellant.[9] The Government presented the unchallenged testimony of the visiting policemen as to statements which appellant is alleged to have made during the visits and after his arrest. It appears that the police made repeated requests to appellant to close the concession, without avail. The substance of his replies was that *he* didn't do very much business, that running a joint was all that *he* knew how to do, that *he* had to feed his children, that *he* was just trying to make a living, that booking horses was in *his* blood, that *he was going to run a bookmaking joint* as long as he pleased, and that if *he* should stop *his business,* there would be twenty people trying to take it over.

When these admissions are coupled with the other evidence, we would be naive, indeed, if we did not consider that the Government had presented substantial evidence from which a jury might conclude that appellant was guilty as charged.[10]

The judgment is affirmed.

---

[6] Donald v. United States, 70 App.D.C. 14, 102 F.2d 618; see Gullatt v. State ex rel. Collins, 169 Ga. 538, 150 S.E. 825.

[7] 65 App.D.C. 231, 82 F.2d 837, certiorari denied, 298 U.S. 655, 56 S.Ct. 675, 80 L.Ed. 1382.

[8] 65 App.D.C., at 238, 82 F.2d at page 844.

[9] Ercoli v. United States, 76 U.S.App. D.C. 360, 131 F.2d 354, decided November 9, 1942; Forte v. United States, 68 App. D.C. 111, 94 F.2d 236, 127 A.L.R. 1120; People v. Tuttle, 27 Cal.App.2d 647, 81 P.2d 571.

[10] The instances where the courts have held that the one apparently in control of the illegal activity had not been shown to be in charge within the meaning of the law are clearly distinguishable: Lewis v. State, 136 Tex.Cr.App.R. 105, 124 S. W.2d 121 (accused was a visitor who was hastily put in charge of the "Kittie" by the manager when he saw the police enter); People v. Mitchell, 66 Hun 629, 21 N.Y.S. 166 (no evidence to connect the accused with the gaming rooms); State v. Hicks, 101 Kan. 782, 168 P. 861 (nothing to show that accused was more than a frequent visitor of the place which had always been in the control of another); Nelson v. United States, 28 App.D. C. 32 (it was affirmatively shown that one other than the accused was in possession and control of the room.